THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT J. KUMPAN, Respondent.—Appeal from an order of the County Court of Fulton County, entered December 18, 1975, which granted defendant's motion to suppress certain oral and written statements made by him on April 17, 1975. The defendant was indicted for the crime of grand larceny in the third degree upon an allegation that he stole the sum of $500 from his employer's place of business on April 14, 1975. He was questioned on that date by Detective Knuffke of the Johnstown Police Department and in a written statement describing the events leading up to the discovery he stated that $500 either was or might be missing and that he was free from any guilt. Although statements were also taken from other employees on April 14, 1975, the defendant was the only one singled out to be submitted to a lie detector test on April 17, 1975. On April 17, 1975 Knuffke came to the place of employment to take defendant to the State Police in Loudonville for a lie detector test. Their initial encounter was at about 8:00 A.M. and the defendant told Knuffke that he had an attorney and the attorney had told him that he did not have to take the test and that he was not going to take the test. Whereupon Knuffke told the defendant that he should tell his attorney to "go fly a kite". The defendant and Knuffke at that time had a heated conversation and then they both returned into the place of employ-

ment where Knuffke conferred with the defendant's supervisor and with the employer's legal counsel. Thereafter Knuffke and the defendant had a further meeting at which he told defendant that unless he went with him and took the lie detector test he would lose his employment. The defendant thereupon relented and agreed to go with Knuffke. When Knuffke and defendant arrived at Loudonville, the defendant was given the lie detector test by an Investigator Phalen who first gave the defendant his *Miranda* warnings and had the defendant sign a form specifically consenting to the test. At the conclusion of the test Phalen told the defendant he was lying and the defendant allegedly then gave an oral confession to him. Phalen told Knuffke and defendant then signed a written confession which recites that it was given voluntarily. The question raised in this case is whether or not the police, and particularly Knuffke, had any right to further question the defendant after he knew that defendant was represented by counsel in regard to the theft. The trial court has found that the defendant submitted to questioning because of mental coercion as to the threat in regard to his job and that there was custodial questioning after knowledge of an attorney representing defendant. In the context of this case there can be little doubt that the defendant was a primary suspect. The finding of the trial court that the statement by Knuffke to the defendant that he would lose his job unless he proceeded immediately to submit to questioning was coercive is supported by the evidence. Furthermore, the record reveals that Knuffke had accused the defendant of taking the money by asking him at one point before the defendant acquiesced, "Do you have any of the money left?" Issues of credibility were for the trial court to decide. As a general rule, the police may not question a suspect after being advised that he is represented by counsel unless there is a waiver of counsel in the presence of counsel *(People v Hobson,* 39 NY2d 479; *People v Arthur,* 22 NY2d 325). However, that rule is only applicable if the defendant is in custody *(People v Hobson, supra).* In this particular case there can be no doubt but that the defendant was not in any way physically restrained or coerced into accompanying Knuffke or submitting to questioning. He was not under arrest and had been advised by his own attorney that he did not have to submit to questioning. The defendant was the apparent last person in this case to have had custody of the employer's money in question and, in any event, anyone with access to the money would be suspect. Under those circumstances, it would be unreasonable for anyone to assume that a lack of full and complete co-operation with the police would *not* probably result in a loss of employment. The "threat" by Knuffke as to loss of employment in this case was not anything other than defendant should have expected to occur in the ordinary course of events of his employment. This is *not* a situation where the defendant, assuming complete innocence, had no objective reason to think his employer would not consider him a likely suspect. On the other hand, this is also *not* a case where the failure to speak would in any way leave the defendant open to being the only suspect or otherwise establish his guilt by reason of unexplained circumstantial evidence. There are, in this case, no circumstances of such a nature as would have probably compelled the defendant to speak by overcoming his will to resist. The necessary element of custody is missing and there is no probative evidence that the interrogation was anything other than voluntary as a matter of law with a voluntary waiver of counsel. Order reversed, on the law and the facts, motion to suppress denied and matter remitted for further proceedings. Greenblott, J. P., Kane and Herlihy, JJ., concur; Mahoney and Larkin, JJ., dissent and vote to affirm in the following memorandum by Mahoney,

J.: The People concede in their brief that: (1) the confession was made after the defendant had consulted with his attorney; (2) the police officer who took defendant to the station house for the polygraph examination was told by defendant that his attorney had advised him not to take the test; (3) defendant's attorney was not present when the alleged waiver of his right to counsel occurred; (4) the defendant confessed at the station house after being told the polygraph had indicated his guilt. Thus, by their own admissions the People seem to have brought this case within the rule of *People v Arthur* (22 NY2d 325), recently reaffirmed in *People v Hobson* (39 NY2d 479) "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer". *(People v Hobson, supra,* p 481 [citation omitted].) The People seek to avoid the rule on the ground that defendant was not in custody when he waived his rights, rather the waiver occurred at the telephone company before defendant was taken to the station house. In support of this argument is cited *People v McKie* (25 NY2d 19). Therein, the court held an inculpatory statement admissible since "at the time the defendant blurted out the admission * * * he was neither in custody nor deprived of his freedom in any significant way" (p 28). The presence of counsel was not necessary because noncustodial interrogation is much less likely to overbear the suspect's will and therefore less a danger to the right against self incrimination (pp 27–29) In *McKie* the waiver of the right to counsel and the inculpatory statement occurred simultaneously in the open street. Here, the defendant may have in public agreed to go to the station house for the test, but the only damaging statements were elicited in police custody. The "custody" element of the *Arthur/Hobson* rule cannot mean that the police can lure the defendant into the intimidating circumstances of the station house and there interrogate him absent counsel on the pretext that a valid noncustodial waiver had already been obtained. The essence of the *People v McKie* exception is that *"at the time* the defendant blurted out the admission * * * he was neither in custody nor deprived of his freedom in any significant way" (p 28 [emphasis supplied]). In contrast, the defendant at bar faced the crucial moment in the station house during a polygraph examination. Since it was while the defendant was in custody that the damaging failure to assert his right to counsel occurred, the *Arthur/Hobson* rule applies and requires that both written and oral confessions be suppressed. Moreover, even if it were possible as a general proposition for a suspect absent counsel to waive in public his right to counsel as to a custodial interrogation about to take place, the waiver which supposedly was secured at the telephone company in this case was void. Defendant at first refused to leave his office. The police officer assigned to bring defendant in for the test thereupon consulted with telephone company officials. The officer then threatened that defendant would lose his job if he refused to take the test. The threat of losing employment is sufficiently grievous to vitiate an apparent waiver of the right against self incrimination *(Gardner v Broderick,* 392 US 273). In reinstating a police officer dismissed for refusing to waive immunity before a Grand Jury, the *Broderick* court stated: "the mandate of the great privilege against self-incrimination does not tolerate the attempt * * * to coerce a waiver of the immunity it confers on penalty of the loss of employment." *(Gardner v Broderick, supra,* p 279.) By a parity of reasoning, the State may not obtain a waiver of the right to counsel by a threat made with the employer's authority, that the suspect must waive his right or be discharged. Of course, entirely aside from the right to counsel,

the *Gardner v Broderick* case is even stronger authority for the conclusion that by threatening the defendant with discharge, the State compelled him to testify against himself in violation of the State (NY Const, art I, § 6) and Federal (US Const, 5th & 14th Amdts) Constitutions. The order should be affirmed.