■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY G. SKINNER, Appellant.—Judgment unanimously affirmed. Memorandum: Defendant's chief contention on his appeal from a judgment of conviction of manslaughter in the first degree (Penal Law, § 125.20) in connection with the death of Diane Snell on June 22, 1975 is that certain oral admissions made at his apartment to Town of Amherst Police Officers Hohensee and Meredith should have been suppressed and not received in evidence. The incriminating statements were made on March 10, 1977 at about 7:45 P.M. during a general discussion of the Snell homicide following the service upon defendant of an order directing him to show cause in court why he should not appear in a lineup. Defendant, to the knowledge of the police, was at the time represented by Leo Fallon, an attorney. Attorney Fallon had repeatedly instructed defendant that he need not subject himself to interviews by the police and that he should refuse to answer any question. After advising him that he should deliver the show cause order to his attorney, Officer Meredith read the order aloud to the defendant. Although he appeared nervous and upset when served with the show cause order, defendant offered the officers food and drink and at their suggestion agreed to discuss the case. The officers then gave the standard *Miranda* warnings. During the questioning which ensued, defendant was sitting on a sofa and appeared relaxed and calm. He frequently returned to the kitchen to check the stove on which he was preparing supper. The officers at no time indicated that defendant was under arrest or that his freedom was in any way restricted. There is no suggestion that their actions were in any way coercive. After making several admissions defendant stated, "I shouldn't have told you as much as I have already" but agreed to accompany the officers to headquarters to give a formal statement. At headquarters he changed his mind and refused to give a statement or to sign a waiver of his rights until he talked with his attorney. Defendant argues that the questioning at his apartment on March 10, 1977 was custodial interrogation and that, therefore, because he was represented by counsel and his counsel was not present, the admissions should have been suppressed (see *People v Hobson,* 39 NY2d 479; *People v McKie,* 25 NY2d 19; *People v Arthur,* 22 NY2d 325; *People v Donovan,* 13 NY2d 148). Although there is no indication of any personal restraint on his freedom, defendant, as evidence that he was in custody, points to the presence of the uniformed policemen in his apartment, their service of the show cause order upon him, his nervousness and the fact that he had had some emotional or psychological problems, and the intensive investigation of the Snell homicide that the police had conducted from June, 1975 through October 6, 1975 during which he was repeatedly questioned as a suspect, given two lie detector tests and asked to accompany police in an automobile to the places where he had admitted having taken Diane Snell. We reject the contention that these factors transformed the defendant's voluntary participation in the questioning in the noncoercive atmosphere of his home into a custodial interrogation. It cannot be said that defendant was deprived of his freedom of action in any way or that he was " 'led to believe, as a reasonable person, that he [was] so deprived.' " *(People v Rodney P. [Anonymous],* 21 NY2d 1, 8, quoting *People v Arnold,* 66 Cal 2d

438, 448; see *People v Yukl,* 25 NY2d 585, 589, cert den 400 US 851; *People v Kumpan,* 55 AD2d 748.) That defendant, immediately after the questioning, stated that he had said more than he should have and subsequently refused to give a written statement at headquarters is evidence that he was fully cognizant of his right to refuse to answer and that the circumstances surrounding the interrogation were not coercive. Considering all of the circumstances, we agree with the trial court's finding on the evidence that he was not in custody. The rule of *People v Arthur (supra)* and *People v Hobson (supra)* does not apply (see *People v McKie, supra)* and the defendant was not prohibited under the *Arthur-Hobson* rule from making a valid waiver of his right to counsel in the absence of counsel. This appeal presents an additional constitutional question not raised in the suppression motion or in the briefs on appeal, viz., whether because defendant was already represented by counsel he could waive his right to counsel without his counsel's presence at a time after the service on him of the show cause order pertaining to the lineup. Arguably under *People v Settles* (46 NY2d 154, 165), *People v Coleman* (43 NY2d 222), *People v Sugden* (35 NY2d 453) and *People v Blake* (35 NY2d 331), the service of the show cause order was a procedure sufficiently judicial in nature so that the defendant could not waive his right to counsel in the absence of his retained counsel at " 'critical stages' held after [that] order [was] issued" *(People v Coleman, supra,* p 225, quoting *People v Sugden, supra,* p 461) such as the return of the show cause order itself or the court-ordered lineup. Here, however, the questioning of the defendant was not a judicial procedure and was completely unrelated and incidental to the service of the show cause order. We do not believe the service of the show cause order was the equivalent of the commencement of the formal judicial proceeding by filing of an accusatory instrument *(People v Blake, supra)* which would have the effect of totally prohibiting any questioning of the defendant thereafter in the absence of counsel. (See *People v Townes,* 41 NY2d 97, 102-103; *People v Roberson,* 41 NY2d 106, 108-109; *People v Waterman,* 9 NY2d 561, 565; *People v Di Biasi,* 7 NY2d 544, 550-551.) We find no basis for reversal in the other points raised on appeal. (Appeal from judgment of Erie Supreme Court—manslaughter, first degree.) Present—Dillon, P. J., Simons, Hancock, Jr., Doerr and Moule, JJ.