■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAMON GOMEZ, Appellant. — Judgment of the Supreme Court, New York County (Galligan, J. on hearing; McGinley, J. on trial) rendered September 30, 1980, convicting defendant, after a jury trial, of manslaughter in the first degree and sentencing him to an indeterminate sentence of three to nine years, affirmed. Defendant appeals from a judgment of the Supreme Court, New York County, convicting him after a jury trial of manslaughter in the first degree and sentencing him to an indeterminate term of three to nine years in prison. The prosecution resulted from an incident on the late evening of July 31 into August 1, 1979 at a swimming pool in Washington Heights during which the deceased, Floyd Knowles, received a stab wound causing his death. Two directly contradictory versions of the event were presented to the jury. Two witnesses, one a friend of the deceased, and the second, a security guard on duty at the pool, testified that one of several persons engaged in an altercation with deceased stabbed him with a knife. The defendant himself testified, in accordance with statements previously given to a detective and an Assistant District Attorney (the latter videotaped), that the deceased was one of two men who had assaulted and attempted to rob him, and that in the course of this assault a knife wielded by one of his assailants fell to the ground, which he picked up, and then thrust at the deceased, stabbing him. The single issue presented was, accordingly, one of justification. The jury verdict was amply supported by the evidence, and our examination of the issues with regard to the trial raised on this appeal discloses no error meriting reversal. The principal issue on this appeal is raised by the claim that defendant's statements were obtained in violation of his constitutional right to counsel, and that, accordingly, the hearing court erred in denying defendant's motion to suppress the statements. The significance of this issue lies in the fact that neither of the witnesses called by the People could identify the defendant as a participant in the incident, and that without the defendant's statements the prosecution would have been unable to establish a prima facie case. The hearing minutes establish that within a day or two after the incident at the pool the defendant had gone to a precinct to make a complaint that he had been the victim of an attempted robbery at the time and place in question. Thereafter defendant's father secured for him a lawyer who interviewed him with regard to the incident. Defendant's father testified that when the detective in charge of this case (not the officer to whom defendant's complaint had been made) sought to interview the defendant, the detective in effect discouraged defendant's father from having an attorney accompany defendant to the station house. This was denied by the detective in testimony credited by the hearing court. We see no reason to disturb that factual finding. The second

issue presented by the evidence was whether defendant's father had informed the detective that a lawyer had been retained in connection with the matter. The detective denied having been told that a lawyer had been retained. On that issue the testimony of defendant's father at the hearing was equivocal. In his direct testimony describing the conversation with the detective, defendant's father did not testify to having so informed the detective. It was only on cross-examination that he claimed to have done so and even in that testimony, defendant's father disclosed an uncertain memory about the conversation. The hearing court denied the motion to suppress, (1) finding that the interrogations of the defendant that resulted in the challenged statements were noncustodial in character, a finding adequately supported by the record and not seriously challenged on this appeal, and (2) holding that statements elicited in a noncustodial interrogation were admissible even if the questioned person had retained a lawyer with regard to the matter, citing, among other authorities *People v McKie* (25 NY2d 19, 28) and *People v Skinner* (71 AD2d 814). In view of the court's interpretation of the then controlling authority, it was not essential to decide whether or not the police had been informed that a lawyer had been retained. However, in its narrative of the evidence the opinion of the hearing court clearly accepted the testimony of the detective that he did not know that the defendant had retained a lawyer, and that finding is adequately supported by the evidence adduced at the hearing. Thereafter, and following the trial, the Court of Appeals in *People v Skinner* (52 NY2d 24), reversing one of the authorities relied on by the hearing court, squarely held that statements elicited from a defendant known to have retained counsel on the matter about which he is questioned may not be used in the absence of a waiver of counsel made in the presence of the attorney even where the interrogation is not custodial. The present relevance of the *Skinner* opinion is that at a late point in the defendant's videotaped statement to the District Attorney, he informed the District Attorney that he had spoken to a lawyer about the matter. Under the principle set forth in *Skinner* the subsequent interrogation of the defendant was clearly inadmissible. We have carefully examined the questions and answers elicited after the defendant had informed the District Attorney that he had spoken to a lawyer. In light of the prior statements made to the detective and the District Attorney and in the context of the relevant circumstances, we are satisfied that the erroneous admission of this part of the statement was harmless beyond a reasonable doubt. (*People v Crimmins,* 36 NY2d 230, 237.) In his statements to the detective and the District Attorney prior to mentioning his lawyer, the defendant had clearly identified himself as the person who had stabbed the deceased causing his death. The only possible defense remaining to defendant thereafter was his claim that the stabbing was justified. Nothing he said in the later answers could have conceivably affected defendant's decision to testify at the trial. And although the District Attorney manifested in the erroneously admitted portion of the statement disbelief in aspects of the defendant's version, as indeed he had conveyed earlier, we think it is in the highest degree improbable that these expressions of doubt by the prosecutor could have affected the jury's verdict in this case. The defendant was indisputably convicted because a wholly disinterested witness gave unimpeached testimony that convincingly refuted his claim that the stabbing had been justified. Concur — Kupferman, J. P., Sandler, Ross, Bloom and Milonas, JJ.