OPINION OF THE COURT
Chief Judge Cooke.
Another in the line of cases concerning the scope of the right to counsel in this State, this appeal presents the question whether an individual who has obtained counsel specifically on the matter under investigation may be interrogated on the very same subject in a noncustodial setting after defendant’s attorney had instructed the police not to question defendant in his absence. The answer is in the negative.
On the morning of June 22, 1975, the body of Diane Snell was found off North French Road in the Town of Amherst, Erie County. Police attention focused almost immediately upon defendant, who had been seen talking with the victim in a local bar the previous night. Two days after the murder, defendant was twice questioned by Amherst detectives. During these interviews, defendant admitted having spoken to Ms. Snell and agreed, after hesitation, to submit to a polygraph examination. In the course of these and other interviews, defendant did not admit in *27 volvement in the murder. During a second polygraph examination on October 6, 1975, defendant acknowledged that upon leaving the bar he gave the victim a ride to the Riverside section of Buffalo. A drive taken with defendant covering the route traveled with Ms. Snell produced nothing further. The journey ended when defendant requested that he be taken home.
Sometime during the early fall of 1975, defendant retained an attorney, Leo Fallon, because of the repeated instances of questioning by the police. Mr. Fallon assured defendant that he need not speak to the police. He called the department to inform the authorities that he represented defendant and instructed them not to question defendant unless he was present. Defendant apparently was not contacted again by the police until March 10, 1977. On that day, defendant was served with an order to show cause, returnable about a week later, why he should not be compelled to appear in a lineup in connection with the Snell investigation. Earlier that afternoon, Mr. Fallon’s office contacted an Assistant District Attorney to confirm that defendant was represented and to acknowledge receipt of the order. The assistant nonetheless instructed the Amherst police to have defendant served personally with the order to show cause, informing an officer that defendant was represented but giving no instructions concerning questioning of defendant.
Detectives Hohensee and Meredith proceeded to defendant’s apartment, where Meredith read the order to show cause. Defendant signed it and. was given a copy. When defendant became upset and asked why he had to appear in a lineup, Hohensee responded that defendant should give the copy to his attorney who would explain and handle the matter.
Following this exchange and because defendant appeared very upset, Hohensee asked defendant if he wanted to talk about the homicide and that if he was involved, to tell all that he knew, “to get it off his chest once and for all.” Defendant agreed to talk. Given the Miranda warnings, he stated that he understood. Thereafter, defendant made the damaging admissions now sought to be sup *28 pressed. Defendant, with his consent, was taken to police headquarters where he then refused to make a statement until he had spoken with his attorney. He was not interrogated further.
Defendant unsuccessfully moved to suppress the statements made on March 10.[1] The hearing court found that although the police knew that defendant was represented on the matter, the questioning occurred in a noncustodial setting and thus the statements did not warrant suppression. Upon conclusion of a jury trial, defendant was convicted of first degree manslaughter. The Appellate Division affirmed, agreeing that the March 10 statements need not have been suppressed because the interrogation was noncustodial and that it was neither a judicial procedure nor related to service of the order (71 AD2d 814). Contrary to these determinations, it is concluded that defendant’s New York constitutional rights were violated by the interrogation in the absence of the attorney retained on the matter and, therefore, reversal is in order.
Our determination is guided by principles founded upon State constitutional guarantees of the privilege against self incrimination, the right to be aided by counsel and due process (see NY Const, art I, § 6; People v Cunningham, 49 NY2d 203; People v Settles, 46 NY2d 154; People v Hobson, 39 NY2d 479). It has long been established in this State that under certain circumstances the right to counsel “includes the right of an accused to have an attorney present while he is considering whether to waive his rights” (People v Cunningham, 49 NY2d 203, 208, supra). In such cases, the right to counsel is said to have “indelibly attached” — i.e., there can be no effective waiver of counsel unless made in the presence of counsel (People v Settles, 46 NY2d 154, 165, 166, supra). This rule of nonwaivability has been recognized in two lines of decisions. In one, it has been ruled applicable to a suspect who is represented by *29 an attorney (e.g., People v Rogers, 48 NY2d 167; People v Hobson, supra; People v Arthur, 22 NY2d 325). In the other, it has been made explicit that a waiver by a person against whom formal criminal proceedings have been commenced will be ineffectual in the absence of counsel (e.g., People v Samuels, 49 NY2d 218; People v Settles, supra).
We have recently again expressed our respect for the right to counsel, ruling impermissible custodial interrogation of an unrepresented individual after the indiviudal has requested the assistance of counsel (People v Cunningham, supra). We there made “clear that an uncounseled waiver of a constitutional right will not be deemed voluntary if it is made after the right to counsel has been invoked” (id., at p 205). A request for the aid of counsel by an individual in custody imports clearly that the individual considers himself or herself incompetent to face the power of the State without an attorney’s advice (id., at p 209). Once an individual expresses the need for counsel he or she stands in the same position as one who has obtained the aid of an attorney and the State may not thereafter seek a waiver in the absence of counsel (id., at pp 209-210; see, also, People v Marrero, 51 NY2d 56, 59).
The reasons for the nonwaiver rule are many. The right to counsel at trial would be empty indeed if it did not include the right to have the presence of an attorney at pretrial proceedings (see People v Donovan, 13 NY2d 148, 152). The prohibition simply recognizes the right and need of an individual to have a competent advocate at his or her side in dealing with the State. Requiring that a person waive the constitutional right to counsel in the presence of an attorney ensures that the person relinquishes the valuable right to the assistance of counsel intelligently and voluntarily, aided by someone acting in his or her interest (see People v Hobson, 39. NY2d 479, 484, 485, supra).
This court’s vigilance in protecting the right to counsel finds additional support even in the ethical responsibility of attorneys in civil matters not to communicate on the subject of the representation with an individual known to be represented by an attorney on the matter (see New York State Bar Association Code of Professional Responsi *30 bility, DR 7-104, subd A, par [1]; see, also, ABA Code of Professional Responsibility, DR 7-104, subd A, par [1]). We would be hard pressed logically to proscribe such conduct in the civil context yet blithely overlook it in the criminal sphere (see People v Hobson, 39 NY2d 479, 484-485, supra).
The People do not dispute the validity of these principles but assert that none are applicable here because defendant was not in custody during the March 10 interrogation. It is true that many of the cases in this area have involved an individual who was in custody when the police obtained damaging evidence. True it is, also, that there have been broad statements in dicta from this court that the non-waiver rule is inapplicable when an individual has contact with the police in a noncustodial setting (see People v McKie, 25 NY2d 19; see, also, People v Hobson, 39 NY2d 479, 483, supra). We think the People’s assertion in this case, however, too broadly characterizes the reported cases.
Two decisions of this court demonstrate that whether a person is in custody at the time of interrogation is not controlling when an attorney represents that person on the matter about which he or she is questioned. In People v Townes (41 NY2d 97), it was ruled that the State could not use against the defendant statements made in the absence of counsel to a member of the New York City Civilian Complaint Review Board during an interview upon defendant’s complaint of mistreatment by the arresting officers. Defendant, incarcerated at Riker’s Island, had been arraigned, assigned counsel and indicted at the time of the interview, the subject of which was “inextricably interwoven” with the criminal charges (id., at p 104). This court ordered the statements suppressed without reference to the custodial settings (see 41 NY2d, at pp 102-105, and concurring opn of Jasen, J., id., at pp 105-106). That custody was not determinative was made clear in People v Roberson (41 NY2d 106), a case factually distinguishable from Townes only because defendant made the complaints and was interviewed after he was released on bail. The court there ruled, without alluding to custody, that Townes was dispositive, noting that the interrogation could not *31 be considered “divorced from the criminal prosecution” (id., at p 109). Thus, we treated the fact of custody as irrelevant in the face of defendant’s known representation on a pending charge and the questioning of him on that matter purportedly for a different purpose (see People v Roberson, supra, at p 110 [dissenting opn]). We refused to give the right to counsel so little meaning that it could easily be circumvented in the manner asserted.
People v McKie (supra) does not compel a different result. It was there concluded that the defendant’s inculpatory statement was not the product of police interrogation. Unnecessarily broad statements in that case concerning a requirement that an individual be in custody before the nonwaiver rule becomes operative have since been eviscerated (see People v Townes, 41 NY2d 97, 103, supra; People v Roberson, 41 NY2d 106,109, supra).[2]
. That Townes and Roberson both involved interrogation following formal commencement of the criminal action against the defendant does not alter the result here, where judicial proceedings were commenced for an order in furtherance of the investigation. The court in those cases did not rely on formal commencement alone but considered also the fact that the defendants had been assigned counsel at the time of questioning. Indeed, formal commencement had not yet been explicitly recognized as giving rise to an indelible right to counsel (see People v Settles 46 NY2d 154, supra)k Additionally, with formal commencement the defendant simply is treated as if an attorney has entered the proceedings on his behalf (see People v Settles, supra, at p 166).
We thus reject the People’s argument here that in the absence of formal commencement of the criminal action the defendant could be questioned with impunity following service of the order to show cause simply because he was not in custody at the time of the interrogation. In retaining *32 an attorney specifically in response to repeated police-initiated contacts, defendant unequivocally indicated that he felt himself unable to deal with the authorities without legal assistance. In a real sense, he had activated his constitutional right to interpose an attorney between himself and the overwhelming power of the State. The attorney did intercede, demanding that the police not question defendant. And until March 10, the police apparently honored that demand. But on that date, after completing their task of serving defendant with the order and with knowledge that defendant was represented by an attorney on the matter under investigation the police questioned defendant on that matter in the absence of counsel. Quite simply, rather than defer to defendant’s invocation of the right to counsel, the police studiously ignored it.[3]
The motivations of the police in conducting the interrogation are immaterial, for the impact on the right to counsel is the same. That right is rendered illusory if the State’s agents are permitted to subject an individual represented by counsel to questioning in a noncustodial setting. The effects of a waiver of counsel are no less real in that setting; waiver of the right to counsel once invoked should be no less ineffective than when made by a person in custody. We thus reiterate that where, as here, a defendant is known to have invoked the right to and obtained the services of counsel on the matter about which the person is questioned, the State may not use statements elicited from that person in the absence of a waiver of counsel made in the presence of the attorney (see People v Townes, supra; People v Roberson, supra).
Accordingly, the order of the Appellate Division should be reversed, motion to suppress defendant’s statements granted and a new trial ordered.

. The hearing court granted defendant’s motion to the extent of suppressing statements, which could be construed as inculpatory, made during the ride on October 6 after defendant stated that he wanted to go home. The court also suppressed identification testimony as the product of unduly suggestive identification procedures.

. Contrary to the dissent’s suggestion, the contours of the developing State constitutional right to counsel were not immutably fixed by every statement in Hobson (see People v Cunningham, 49 NY2d 203, supra; People v Rogers, 48 NY2d 167, supra). Indeed, this case is but an application of Townes and Roberson, which were decided without reference to custody and shortly after the Hobson decision itself.

. To the dissent’s observation that police depend upon statements of the “guilty” to further an investigation, it need only be noted that law enforcement officials must operate within the bounds of our State constitutional guarantees of the privilege against self incrimination and the right to counsel.