OPINION OF THE COURT
Vincent E. Doyle, J.
On February 4,1979, while relator was on parole from a 0- to 25-year sentence for robbery in the first degree, he was arrested in Rochester, New York. He was charged with possession of a firearm, to wit: an unloaded revolver, and with menacing, in that he allegedly pointed the firearm at one Colleen Garfield. His parole officer was advised of his arrest and a subsequent search was made of relator’s residence. The search revealed the presence of an illegal controlled substance and paraphernalia for the administration of drugs. Relator had counsel who was representing him on the pending criminal charges as well as on the alleged parole violation filed by relator’s parole officer. On February 13, 1979, after a preliminary parole violation hearing in Monroe County, the hearing officer found probable cause to hold relator for a final parole revocation hearing. Counsel for the relator, by letter to the Division of Parole, requested that the final revocation hearing be adjourned pending disposition of the criminal charges in Monroe County Court.
On April 30, 1979, the Parole Board granted counsel’s request and, in fact, asked relator’s attorney to notify the parole office when a final hearing could be scheduled. On *768 July 18,1979, relator was transferred from Monroe County Jail to Attica Correctional Facility.
Almost a year later, i.e., June 23, 1980, he appeared before Parole Hearing Officer Kenneth Graber in Attica Correctional Facility without counsel. The criminal charges in Monroe County Court were still pending and the same attorney still represented relator. Nevertheless, Hearing Officer Graber engaged in dialogue with relator and subsequently relator decided to waive his rights to have counsel present “for the purpose of having this hearing today”. At this final parole revocation hearing relator was faced with three charges:
1. pointing a firearm at Colleen Garfield, placing her in fear of imminent physical injury (menacing),
2. possession of a firearm, i.e., a revolver, and
3. possession of an illegal controlled substance and of paraphernalia for the administration of illegal drugs. Relator continued to plead not guilty and, in fact, testified at the hearing. At the conclusion of it, the hearing officer dismissed the menacing charge but affirmed the other two charges and recommended to the Parole Board that relator serve two years for violation of parole. The board later affirmed this determination and recommendation.
Subsequent to the parole violation hearing, relator was found guilty in Monroe County Court of criminal possession of a firearm, i.e., a revolver, and was sentenced to an additional term of 2 to 4 years.
On June 15, 1981, the Honorable John S. Conable, Acting Supreme Court Judge in Wyoming County, granted this writ of habeas corpus.
Relator challenges his final parole revocation hearing on two grounds.
First, relator argues that his due process rights were violated because he was not given a revocation hearing in Monroe County, the place where the parole violations were alleged to have occurred (citing Executive Law, § 259-i, subd 3, par [e], cl [i]). He claims that his abilities to communicate with his Monroe County counsel, to present a defense and to produce witnesses were impaired by the State’s failure to hold a local hearing.
*769 Second, the relator urges that pursuant to People v Samuels (49 NY2d 218), his right to counsel had indelibly attached when his counsel appeared both in person and by letter. Thus, no waiver of his rights, including the right to counsel, could be elicited by any agent of the State without his counsel present. He relies primarily on People v Skinner (52 NY2d 24).
In Skinner, the court held that an individual who has obtained counsel specifically on a matter under police investigation may not be questioned on that very same subject — even in a noncustodial setting — after the defendant’s attorney has instructed the police not to question the defendant in his absence.
“A request for the aid of counsel by an individual in custody imports clearly that the individual considers himself or herself incompetent to face the power of the State without an attorney’s advice *** Once an individual expresses the need for counsel he or she stands in the same position as one who has obtained the aid of an attorney and the State may not thereafter seek a waiver in the absence of counsel”. (People v Skinner, supra, at p 29.)
Recently, the Court of Appeals has enhanced the right to counsel (see, e.g., People v Marrero, 51 NY2d 56; People v Cunningham, 49 NY2d 203; People v Rogers, 48 NY2d 167; People v Settles, 46 NY2d 154). The question presented herein is whether the nonwaiver of counsel rule as developed in these criminal cases should also apply to parole revocation hearing cases. Specifically, can the right to counsel be waived by a parolee, in the absence of his lawyer, at a final parole revocation hearing even though he previously had requested counsel and, in fact, counsel had appeared?
Relator argues that since a parolee has the right to coupsel in revocation proceedings as a matter of State constitutional law (see People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376), then the non-waiver of counsel rule as developed in criminal cases should likewise apply in parole revocation hearing cases.
Respondent counters that the administrative nature of parole revocation hearings significantly distinguishes them from criminal proceedings and, therefore, standards *770 applied to the latter should not necessarily carry over to the former, citing People ex rel. King v New York State Bd. of Parole (65 AD2d 465). In particular, he asserts that the nonwaiver rule is unnecessary in the parole revocation process because the police harassment to which the defendant in Skinner was subjected is not possible at a parole hearing. He argues that the hearing officer, who is supposed to be an impartial decision maker, must and will explain to the parolee his or her rights on the record.
The nonwaiver rule as developed in criminal cases is founded upon the State constitutional guarantees of the right to the assistance of counsel, due process of law, and the privilege against self incrimination (People v Skinner, 52 NY2d 24, supra; see, also, NY Const, art I, § 6; People v Cunningham, 49 NY2d 203, 207, supra). The right to counsel at a final parole revocation hearing, on the other hand, is based upon the due process clause of the New York Constitution (People ex rel. Menechino v Warden, Green Haven State Prison, supra; People ex rel. Donohoe v Montanye, 35 NY2d 221), and is codified in section 259-i (subd 3, par [f], cl [v]) of the Executive Law.
It is unclear what impact this difference in State constitutional roots should have on the application of the non-waiver of counsel rule to final parole revocation hearings. While revocation hearings are administrative in nature (see People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 382, supra) the courts nevertheless have recognized the applicability of constitutional safeguards to alleged parole violators (see, e.g., People ex rel. Gonzales v Dalsheim, 52 NY2d 9; People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76; People ex rel. Jones v New York State Bd. of Parole, 76 AD2d 782). This court is also mindful that it “must * * * remain sensitive to the serious, if not irreparable, consequences which may befall a parolee if the charges of misconduct are sustained by the Board of Parole”. (People ex rel. Piccarillo v New York State Bd. of Parole, supra, at p 80.)
Among the reasons that have been given by the Court of Appeals for the nonwaiver of counsel rule, two have special relevance to this case.
*771 First, “[t]he prohibition simply recognizes the right and need of an individual to have a competent advocate at his or her side in dealing with the State. Requiring that a person waive the constitutional right to counsel in the presence of an attorney ensures that the person relinquishes the valuable right to the assistance of counsel intelligently and voluntarily, aided by someone acting in his or her interest?’ (People v Skinner, 25 NY2d 24, 29, supra; emphasis supplied). With the existence of thé non-waiver rule, therefore, a court not need wonder whether ignorance or coercion has played a part in the defendant’s decision to waive counsel. In fact, it must deem an uncounseled waiver of a constitutional right to be involuntary if the waiver is made after the right to counsel has been invoked (People v Cunningham, 49 NY2d 203, 205, supra).
Second, the nonwaiver of counsel rule acknowledges that “[o]nce a matter is the subject of a legal controversy [including a civil controversy] and discussions relating thereto should be conducted by counsel: at that point the parties are in no position to safeguard their rights” (People v Settles, 46 NY2d 154, 164; see, also, People v Skinner, supra, at p 29, holding that an attorney in a civil case has an ethical responsibility not to discuss the case with an individual known to be represented by another attorney on the matter).
This court must look beyond appearances to see the reality — the final parole hearing under the facts of this case was a “mini trial” of the criminal charges awaiting disposition in Monroe County Court. The relator had counsel. Yet, this counsel was not present when relator was permitted by the New York State parole hearing officer to waive his right to counsel. Clearly such a waiver would not be permitted at any stage of a criminal proceeding and it must not be permitted under the facts here. (It is not necessary to decide what might be the rule if the alleged parole violation was noncriminal conduct, e.g., failure to report to a parole officer, etc.)
People ex rel. Piccarillo v New York State Bd. of Parole (48 NY2d 76, supra) is illustrative of the adverse consequences of refusing to apply the nonwaiver of counsel rule in parole revocation hearings.
*772 The court in Piccarillo held that once evidence is determined by a court to be the fruit of an unreasonable search and seizure, it cannot be admitted at a subsequent parole revocation hearing. It reasoned that to decide otherwise would result in a subversion of the exclusionary rule’s deterrent effect.
In light of Piccarillo, it can easily be seen why an attorney, on behalf of his client, might request an adjournment of the final parole revocation hearing pending the outcome of the criminal case. By upholding the uncounseled waiver of the right to counsel, when the charges the relator faced at the parole revocation hearing were predicated upon pending criminal charges, this court would in effect be second guessing the strategy of the relator’s lawyer. Moreover, it would be encouraging future attempts by the State to obtain uncounseled waivers of counsel from alleged parole violators so as to avoid the impact of Piccarillo.
Certainly, the State can gain numerous other advantages by securing an uncounseled waiver of the right to counsel at a parole revocation hearing from a parolee, and the instant case provides some examples. The relator testified and made numerous incriminating statements. Conducting his own cross-examination, he asked only one question of one of three witnesses who testified against him. He never presented witnesses in his defense or on the question of whether reincarceration was appropriate. Additionally, he made no legal argument or request concerning the location of the final revocation hearing.
A denial of due process at parole revocation hearings can result in either a court-ordered new parole violation hearing or a complete nullification of the parole violation process (see People ex rel. Warren v Mancusi, 40 AD2d 279, People ex rel. Gaskin v Smith, 55 AD2d 1004). In the instant case, a new hearing would result in the Division of Parole simply introducing a certificate of conviction to establish that the relator had violated the terms of his parole. Accordingly, under the circumstances of this case, this court concludes that the action of the New York State Parole Board in 1980 must be nullified and the delinquency be canceled to protect the relator’s constitutional *773 right to the assistance of counsel (see People ex rel. Levy v Dalsheim, 66 AD2d 827; People ex rel. Walsh v Vincent, 40 NY2d 1049).
The Department of Correctional Services, therefore, must recompute the relator’s present sentence and any determination of years to be served because of relator’s violation is hereby vacated.