OPINION OF THE COURT
Patrick W. McGinley, J.
The defendant, indicted for the crime of murder in the second degree, moves to suppress two tape recorded conversations between himself and Michael Piri on the grounds that Piri’s consent to the making and recording of the calls was coerced and that the recordings were obtained in violation of the defendant’s right to counsel.
This case presents the latest nuance in the continuing line of right-to-counsel cases, i.e., where the police deliberately elicit incriminating statements from a suspect, in a noncustodial status, via telephone from a co-operating codefendant, is the right to counsel triggered by police knowledge that the suspect knows the name and telephone number of an attorney whom he suggests be retained by the co-operating codefendant?
*1047 A hearing was conducted on December .17,18, 21, 22 and 23 during which the People called Martin Light, Esq., Detective August Jonza, Detective Anthony DiChiaro, Lieutenant John Doyle, and Michael Piri. Vincent Valella, Esq., and the defendant testified for the defense. The court finds the testimony of the People’s witnesses to have been forthright and credible.
While conducting an investigation into the shooting death of Anthony Fiore on October 19, 1980 the police, on several occasions, interviewed the defendant, Arnold Iannaccone, the brother-in-law of the deceased. The investigation broadened and subsequently led to the arrest of Michael Piri and James Conway, employees of the defendant on December 13,1980. Piri and Conway thereafter pleaded guilty, respectively, to manslaughter in the first degree and murder in the second degree in connection with their involvement in the shooting of Anthony Fiore.
piri’s consent
At approximately 1:00 a.m. on December 13, 1980, six police officers arrived at the home of Michael Piri, who accompanied them to the 24th Precinct for questioning. Piri was placed under arrest at 9:30 a.m.
Piri’s mother had arrived at the precinct prior to his being placed under arrest and was permitted to talk to him. Piri thereafter made a written and video taped statement which implicated the defendant in the murder.
After Piri completed his written and video taped statements, the officers suggested that Piri call the defendant to confirm the information Piri had provided implicating the defendant in the crime. In exchange for Piri’s co-operation, the officers assured him that they would inform the District Attorney’s Office and the sentencing Judge of any assistance he provided.
Piri agreed to telephone the defendant. Before placing the first call, the officers discussed in general terms, what Piri would say to the defendant. Piri was not provided with a written script; however, the police told him to arrange a meeting with the defendant so that they could record any conversation thereat. No meeting was arranged.
*1048 The officers did not listen in on the call on an extension phone. Therefore, they heard only Piri’s end of the conversation. However, the call was tape recorded and then replayed by the officers and the Assistant District Attorney.
The first tape begins:
“piri — Tony, I’m in trouble down here.
“iannaccone — I want you to call the lawyer.
“piri — I can’t find his number.”
(The defendant gives him the number.)
“piri — Who’s this now, Martin Light, right?
“iannaccone — Yea.”
Piri and the officers from the 24th Precinct testified that it was Piri’s own idea to ask the defendant for the number of the attorney. After the tape was replayed, someone checked the telephone number the defendant had provided for Martin Light and found it to be incorrect.
At approximately 3:00 a.m., the officers suggested that Piri call the defendant again. The wrong number supplied by the defendant for Martin Light provided the excuse for the second call.
During this second call, the defendant provided the correct number for the attorney, who the defendant advised, would counsel Piri.
The contents of these two tape recorded conversations form the object of the defendant’s motion to suppress.
The defendant contends that Piri’s consent to the making and recording of the calls was obtained by coercion. Piri was 19 years of age at the time of his arrest and he had been awake for almost 20 hours when he consented to make the telephone calls. The defendant also contends that Piri requested an attorney when he arrived at the precinct, but was told by the officers that, since he was not under arrest, he did not need one.
The defendant further contends that Piri’s concern for his mother is what prompted him to make the calls. Piri testified that he had lied to the police in his written statement when he told them that he was home at 8:30 p.m. *1049 on October 19,1980 and had received a phone call from the defendant. In fact, Piri was not at home, and his mother had received the call. Piri had overheard some officers discussing the possibility of charging his mother with a crime for lying to them when she confirmed what her son had said, i.e., that he was home and had received a phone call from the defendant on the evening of October 19.
His mother had further informed him that an officer had told her that he knew she was covering up for her son. Piri corrected his statement about being home to receive the phone call in his video taped statement, admitting that it was actually his mother who had received the call from the defendant.
The court finds that Piri’s consent to the making and recording of the two telephone calls to the defendant during the early morning hours of December 14, 1980 was voluntary.
“The standard for determining consent to the taping of a phone conversation is lower than that for demonstrating waiver of the Fourth Amendment right against unreasonable search and seizure, the Fifth Amendment right against self-incrimination or the Sixth Amendment right to counsel * * *
“[o]nce an individual has agreed to cooperate with law enforcement officials, the Government can show consent to the taping of a conversation by proving that the informer allowed his conversation to be recorded ‘after knowing what the law enforcement agents were about.’” (United States v Cafaro, 480 F Supp 511, 521., citing United States v Fuentes, 563 F2d 527, cert den sub nom. Sansone v United States, 434 US 959; accord United States v Bonanno, 487 F2d 654.)
In Cafaro (supra), the informer, subsequent to his arrest and agreement to co-operate with the Government, consented to have his phone conversation with the defendant recorded. The informer’s consent was held to be valid even though Federal agents permitted him to inject himself with desoxyn, an amphetamine. The court found that the informer was coherent and fully aware of what the agents wanted him to do and why they wanted him to do it.
*1050 In the instant case, before Piri consented to make the calls, he had already been arrested and had made a written and video taped statement concerning his involvement in the Fiore shooting. Piri’s claim that his request for an attorney was denied is not an issue herein; moreover, the prosecution does not seek to introduce the contents of the telephone conversations against Piri.
Although Piri’s concern for his mother’s welfare was undoubtedly a consideration in his decision to co-operate, it cannot be said that this was the sole factor behind his decision and will not render his consent invalid. Clearly his decision to co-operate with the police was to further his own interests, in that he was promised that a recommendation would be made to the sentencing Judge.
“An informer’s consent to the monitoring or recording of a telephone conversation is an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant consequences to him. Hence, it will normally suffice for the Government to show that the informer went ahead with a call after knowing what the law enforcement officials were about.” (United States v Bonanno, supra, at pp 658-659.)
Piri was permitted to consult with his mother and was provided with the opportunity to eat and rest. The testimony of Detective Jonza, Sergeant DiChiaro and Lieutenant Doyle, who participated in Piri’s questioning, was consistent with that of Piri, who testified that he voluntarily consented to the making and recording of his conversations with the defendant.
The court holds that Piri knew what the “law enforcement agents were about” and that he was acting to further his own interests when he consented to the making and recording of the telephone calls. Therefore, the motion to suppress on the ground that Piri’s consent was coerced is denied.
RIGHT TO COUNSEL
The defendant contends that the recorded conversations herein were obtained in violation of his Sixth Amendment *1051 right to counsel, since the police had reason to know that the defendant had been in contact with an attorney.
Specifically, the defendant contends that he had consulted with Vincent Valella, Esq., the family attorney for over 40 years, numerous times in connection with this case. The defendant alleges that the police were aware of his contacts with Valella and that they had even followed him on one occasion to Valella’s law office. The officers deny any knowledge of surveillance being placed on the defendant and the court finds the officers’ testimony to be credible.
Valella testified that his only contact with law enforcement officials, with regard to the Fiore shooting prior to December 14,1980, was when he called the District Attorney’s office to inquire about recovering Fiore’s body and the automobile, the tire of which he had been changing when he was shot. He never discussed any aspect of the case with regard to the defendant, nor did he ever advise the police to stop questioning the defendant in his absence. In short, Valella gave no indication to the police that he had entered this case on behalf of Arnold Iannaccone.
Vincent Valella’s son, Guy Valella, Esq., accompanied Louise Fiore, the wife of the deceased and the sister of the defendant, to the District Attorney’s Office to discuss the recovery of the car and of her husband’s body. Neither Valella was present during the many occasions when the defendant was contacted by the police. Although not determinative of this issue, it is noted that neither received a retainer fee from the defendant.
The court finds that the police were not aware of, nor should they have been aware of, any representation of the defendant by the Valellas. Vincent Valella testified that, even though no retainer was received or expected from the defendant, he was counsel to the defendant at the time the tapes in question were recorded. However, there is no conceivable way in which the police could have known of such representation since neither the defendant, his family nor Valella ever so informed the police.
Furthermore, since the defendant had no prior arrest record, knowledge of counsel’s representation could not be *1052 imputed to the police. (See People v Rogers, 48 NY2d 167; People v Smith, 54 NY2d 954; People v Bartolomeo, 53 NY2d 225, where the Court of Appeals held that a suspect who is actually represented on a pending charge may not be subjected to custodial interrogation concerning an unrelated criminal charge where the police know of that representation or of the pending charge.)
The defendant also alleges that the police knew he was represented by counsel when they seized the telephone records from his shop on December 12, 1980. He claims that when the police arrived, both he and his father informed the officers that their attorney had given them permission to turn the records over, provided they were returned. Detective Jonza, Sergeant DiChiaro, and Lieutenant Doyle deny having any recollection of such statement being made. The defendant’s father did not testify at the hearing. The court finds the officers’ testimony to be credible.
Finally, the defendant contends that the police knew or should have known that an attorney had entered the proceedings after Piri was arrested. Piri testified that he mentioned, in his video taped statement, that the defendant had told him that a lawyer would be made available to him.
On the tape of the first phone call, the defendant told Piri to contact the attorney, i.e., Martin Light, Esq., and that Light could not be reached until the following Monday. The defendant also told Piri that Light had a device on his telephone which recorded messages. When Piri asked the defendant if Light would know what the call would concern the defendant stated “took care of that end already.”
Martin Light testified that he first met with the defendant and his father on December 15, 1980, the day after Piri telephoned the defendant, and that he was retained on that day. He contacted the police and the District Attorney’s Office on December 15 to inform them that he had been retained by the defendant.
The court finds that the defendant’s right to counsel was not violated. Piri’s statement on the video tape that the defendant had said he would provide a lawyer indicates only that counsel would be provided for Piri.
*1053 Although the “interrogator” in this case was a private citizen, the court finds that Piri was acting as an agent of the police when he made the telephone calls to the defendant. (CPL 60.45, subd 2; People v. Brooks, 83 AD2d 349.) Therefore, the Sixth Amendment rules are equally applicable to the actions of Piri as they would be to police officers acting alone.
The New York Court of Appeals has announced, in two lines of cases, when the right to counsel attaches. The first line of cases holds that the right to counsel indelibly attaches upon the commencement of formal adversary proceedings. (People v Settles, 46 NY2d 154; People v Samuels, 49 NY2d 218; People v Hobson, 39 NY2d 479; People v Bodie, 16 NY2d 275; People v Meyer, 11 NY2d 162; People v Waterman, 9 NY2d 561; People v Di Biasi, 7 NY2d 544.)
Formal adversary proceedings had not been commenced against the defendant at the time of the tape recordings, although he was clearly a suspect. Therefore, although the officers concededly had sufficient cause to arrest the defendant, the right to counsel had not yet attached under the rule enunciated by this first line of cases.
“There is no constitutional right to be arrested * * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.” (Hoffa v United States, 385 US 293, 310.)
The second line of cases holds that an indelible right to counsel attaches, in cases where formal adversary proceedings have not yet commenced, to suspects in custody, who have already obtained or have been assigned counsel to represent them on the specific charge for which they were being held. (People v Rogers, supra; People v Ermo, 47 NY2d 863; People v Carl, 46 NY2d 806; People v Hobson, supra; People v Arthur, 22 NY2d 325; People v Friedlander, 16 NY2d 248; People v Gunner, 15 NY2d 226.) The rule also applies when the defendant is represented, but is not in custody. (People v Skinner, 52 NY2d 24.)
In Skinner (supra), the suspect had retained an attorney after he was repeatedly questioned by the police. The *1054 attorney informed the authorities that he represented the suspect and instructed them not to question him in his absence. The defendant was served with an order to show cause why he should not be compelled to appear in a lineup and his attorney again contacted the District Attorney’s Office. Police officers went to the defendant’s home where he was personally served with the order to show cause. When the defendant became upset, an officer asked the defendant if he wanted to talk about the homicide and the defendant made a statement.
The court held that “an individual who has obtained counsel specifically on the matter under investigation may [not] be interrogated on the very same subject in a noncustodial setting after defendant’s attorney had instructed the police not to question defendant in his absence.” (People v Skinner, supra, at p 26.)
The instant case is clearly distinguishable from Skinner (supra). In Skinner, although formal judicial proceedings had not yet been instituted against the defendant, he had been served with an order to show cause. No such judicial proceeding had been commenced against this defendant.
In Skinner (supra), as in other cases finding a violation of the defendant’s right to counsel, the defendant clearly asserted his right to counsel acknowledging his incompetency to face the power of the State without an attorney’s advice. (People v Cunningham, 49 NY2d 203.)
In the instant case, the defendant, although finding himself in continuous contact with the police, never retained an attorney who either informed the police of such representation or instructed the police not to question his client. This is not a case where the police “know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant”. (People v Ramos, 40 NY2d 610, 615.)
In People v Marrero (51 NY2d 56, 58) the court held that “the police may [not] question an individual in the absence of counsel when they know that the defendant was represented by counsel at the time of arrest, but did not know that the attorney had only agreed to arrange the defen-
*1055 dant’s surrender to the police.” The court (p 59) underscored the importance of police awareness of an attorney’s appearance on the defendant’s behalf rather than the precise terms of a retainer agreement.
Knowledge of an attorney’s entrance into the proceedings will be imputed to the police when a defendant’s right to counsel is impermissibly impeded by the inadequacy of police procedures that delay communications between the defendant and his attorney. (People v Garofolo, 46 NY2d 592, 596.)
Unlike the situations presented in Marrero and Garofolo {supra), knowledge of an attorney’s entrance into these proceedings cannot be imputed to the police. Neither Valella, Light, the defendant nor his family ever gave any indication that an attorney had been retained on behalf of the defendant.
It has also been held that custodial interrogation of an unrepresented individual after the individual has requested the assistance of counsel is impermissible. (People v Cunningham, supra.) The Fourth Department extended this rule to a defendant who is not in custody but who clearly asserts his desire to have an attorney. (People v Johnson, 79 AD2d 201.) The defendant in the instant case never asserted a desire to have an attorney present.
Although Martin Light’s name came to the attention of the officers after replaying the first tape, Piri had earlier indicated, in his video taped statement, that an attorney would be sent by the defendant to aid him. The defendant’s conversation with Piri over the telephone could only confirm the officers’ belief that if Martin Light represented anyone, it was Piri.
In the recent case of People v Ferrara (54 NY2d 498), after the defendant had retained counsel in connection with his appearance before a Grand Jury, the prosecution arranged to record the defendant’s conversations with another person during which the defendant offered a kickback. The defendant was thereafter subpoenaed to appear before another Grand Jury and denied any knowledge of kickbacks. His conviction for perjury based on this last appearance before the Grand Jury was upheld. The Court *1056 of Appeals held that the defendant was not denied his right to counsel since the retention of counsel in connection with a Grand Jury inquiry does not preclude investigative techniques that elicit in a noncustodial setting a plan to commit a new crime of the type under scrutiny rather than a confession.
Although the investigative techniques employed here were designed to elicit statements concerning a crime already committed, the court finds that an extension of the right to counsel under the circumstances presented in this case, where the defendant was not in custody, had not asserted his right to counsel in any manner to the police, and where counsel had not, in fact, been retained, would severly and unfairly restrict law enforcement’s ability to question any suspect in the absence of counsel. Here the defendant mentioned counsel to protect his accomplices and thereby to insulate himself from any legal situation where he would have need to retain counsel. To arrange counsel for one’s accomplice should not be equated to the retention of counsel on one’s own behalf. The right to counsel does not extend so far.
Therefore, the motion to suppress the tape recorded conversation of December 14, 1980 is denied.