OPINION OF THE COURT
Patrick D. Monserrate, J.
Following the indictment and arraignment of the defendant on a two-count indictment, each charging the class D felony crime of criminal sale of a controlled substance in the fifth degree (Penal Law, § 220.31), counsel for the defendant has moved (CPL art 710) to suppress the use in evidence of certain self incrimination evidence which the People have given notice that they intend to offer at trial as a part of their direct case.
An evidentiary hearing on the defense motion was held before the court on June 4, 1982.
FINDINGS OF FACT
The subject self incrimination evidence consists of oral statements and admissions which were made by the defendant to two members of the City of Elmira Police Department on October 1, 1981.
*268 The police officers, Sergeant Michael J. Ross and Patrolman William M. Batrowney, each testified at the hearing and indicated that the subject of their inquiry with the defendant on October 1 was a continuing investigation in which they had been involved for a number of months concerning the alleged illegal diversion of prescription drugs by the defendant (then a licensed pharmacist) and that during that investigation, each had become aware that the defendant had retained an attorney, one Gerald E. DeFilippo, to represent the defendant’s interests in connection with the investigation and, in fact, Sergeant Ross acknowledged that during the month of September, he had spoken by phone to Mr. DeFilippo in an attempt to obtain the latter’s permission for the police to take a statement from his client.
It was the testimony of both police officers that the defendant’s presence at the Elmira Police Department on the afternoon of October 1 (at about 3:30 p.m.) was occasioned by the defendant’s arrival, unaccompanied by police or lawyer, in response to some prior contact or “arrangement” with his attorney (the details of which neither officer could be specific).
However, Gerald E. DeFilippo, an attorney, who had been retained by the defendant in August or September of 1981, in connection with the matter under investigation, testified as to a specific recollection of the circumstances which occasioned his client’s visit to the police department on that afternoon.
Mr. DeFilippo recalled that, on the morning of that day, he had appeared in the Recorder’s Court for the City of Elmira, on behalf of some other clients, and as he was leaving the building, he was involved in a street-side encounter with Sergeant Ross. Mr. DeFilippo indicated that Sergeant Ross (as he had on several prior occasions), inquired as to when Mr. DeFilippo might permit the police to question the defendant about the matter under investigation. Mr. DeFilippo then inquired of Sergeant Ross as to why, and in what context, they wished to speak with his client. He recalled being told by Sergeant Ross, in words or substance, that the police were “not interested in prosecuting” the defendant, but merely wished to have his co *269 operation “in cleaning up” his alleged questionable practices with respect to prescription drugs.
Mr. DeFilippo further testified that following this assurance by Sergeant Ross — and in reliance upon it — he telephoned the defendant and instructed him to go to the Elmira Police Department that afternoon, and to co-operate with the police by answering their questions concerning the matter.
During his hearing testimony, Sergeant Michael J. Ross stated that he, too, recalled a chance street encounter with Mr. DeFilippo, at which a conversation took place concerning the defendant and the investigation. However, Sergeant Ross maintained that the conversation did not include any representations or assurances by him that the defendant was no longer a prospective defendant in the investigation, and it was Sergeant Ross’ recollection that the conversation with Mr. DeFilippo took place some days, or even weeks, after the defendant had been questioned on October 1 and made the self incriminating admissions under review by this court.
The court finds Mr. DeFilippo’s account of the circumstances under which he advised his client to go alone to the police and to co-operate as being the more credible account, particularly when no other reason or explanation was proffered, on behalf of the People, as to why a lawyer of Mr. DeFilippo’s experience would turn over his client for police questioning had he not received the assurance to which he testified; an act he may well have done upon being so assured.
CONCLUSIONS OF LAW AND REASONS
Based upon the foregoing findings of fact, the court reaches the following conclusions of law beyond a reasonable doubt.
Prior to the subject questioning of the defendant by members of the Elmira Police Department on October 1, 1981, the defendant had retained the services of an attorney to represent him in the matter under investigation, and this fact was known to members of the police department to whom the defendant made the admissions which are the subject of this motion. Being thus represented, an *270 effective waiver of his rights against self incrimination and to counsel could not be made, except in the presence of his attorney (People v Hobson, 39 NY2d 479).
Under these circumstances, such a purported waiver by the defendant, as that represented by People’s Exhibit No. 1, is no more effective without his attorney being present whether the questioning was custodial in nature or not (People v Skinner, 52 NY2d 24).
Concededly, the defendant’s attorney was not physically “present” when the purported waiver occurred in this case. In the event that some reviewing court may find that under the peculiar circumstances of this particular case (where the fact that a defendant is questioned in the absence of his attorney is due to the attorney’s own choice, and with his knowledge and consent, as well as that of the defendant) that both the defendant and his attorney effectively waived the latter’s presence at the interrogation session, it should further be pointed out that the court concludes from the evidence at the hearing, that the “consent” of the attorney to have his client questioned by the police without him being present, was specifically conditioned on an understanding that whatever the defendant told the police would not be used against his client as a defendant in a subsequent criminal investigation. Such a circumstance would, and should, preclude the use in evidence against the defendant, in any way, of anything which he told the police on October 1, 1981, both as a matter of due process and fundamental fairness, as being outside the intended scope of any such “waiver” (People v Tillman, 52 NY2d 1019).
The defendant’s motion to suppress the use in evidence — either as a part of the People’s direct case or a cross-examination of the defendant should he elect to testify at trial — of the content of his admissions as summarized in People’s Exhibit No. 2, should be granted.