Jasen, J.
(dissenting). Although I did not acquiesce in prior holdings of this court adopting the broad right of counsel rule (People v Rogers, 48 NY2d 167, 175-178; People v Marrero, 51 NY2d 56, 59-61; People v Skinner, 52 NY2d 24, 32-36; People v Bartolomeo, 53 NY2d 225, 236), which would seem to necessitate a reversal of defendant’s conviction of reckless murder, in spite of overwhelming evidence of guilt, I believe that there comes a point at which an appellate court, such as ours, must recognize that the dictates of common sense and reason must be considered in striking a balance between a suspect’s fundamental right to counsel and the fundamental duty of the police to aid persons in trouble, particularly those who may be the victims of violent crimes. A rule that turns criminals free can be justified only by clear and convincing evidence that its benefit to society outweighs its cost to society. In *178 my view, the benefits from applying an inflexible per se right of counsel rule to the particular facts and circumstances surrounding this case falls far short of meeting that test.
In my opinion, the analysis presented by Judge Wachtler in his dissenting opinion, whether viewed as an emergency exception* to the right of counsel rule or as a limitation on the further development of that right as it relates to an emergency police inquiry, recognizes the practical realities of a missing persons investigation and the inappropriateness of further applying the per se right of counsel rule enunciated in People v Skinner (supra). Such an investigation by its very nature requires the police to act expediently in the hope of finding a person whose life may be in danger and who may be in need of immediate assistance. While it may be true that the person is missing because of the criminal acts of another, the rights of a potential defendant should not hamper an investigation directed primarily to aid the victim. (Snyder v Massachusetts, 291 US 97, 122.)
Nor is it practical to suggest that the police should know the precise moment their investigation changes from primarily a missing persons investigation to an accusatory investigation. In fact, many such emergency investigations will in the natural course of good police work uncover criminal activity and evidence related to that activity. In recognizing a demarcation between investigatory and accusatory police work, for the purpose of applying the right to counsel rule, we would be fulfilling our obligation to locate the proper balance between competing demands for effective police protection and strict observation of a suspect’s fundamental constitutional rights. However, as a policy matter, we should allow the police adequate discretion to conduct this type of emergency investigation until it is clearly established that a crime has been committed, at *179 which point the investigation would be termed accusatory in nature and would focus only on determining responsibility for the crime.
In the insulated environment of an appellate court, which naturally deals in hindsight, it is easy to pinpoint when such a change in an investigation occurred, but I do not believe that the Constitution requires the police to make such fine distinctions during an emergency investigation oriented to locating a missing 18-year-old college student. (People v Rogers, supra; People v Skinner, supra; People v Middleton, 54 NY2d 474; Hoffa v United States, 385 US 293, 310.) To do otherwise would result in the accused going free, not because the constable blundered, but because the constable lacked the foresight to ascertain the precise nature of the investigation.
It is for this reason that I believe this case is distinguishable from the prior precedents of this court which extended the constitutional right to counsel to the investigatory stages of police work. In People v Skinner (52 NY2d 24, supra), it was ascertained that a murder had been committed and finding the person responsible was the focus of the police investigation. There were no competing concerns regarding the victim’s safety or fate. Nor was there any compelling time constraint such as exists when it is thought that a person may be being held captive. Thus, I believe there is a very real practical distinction to be drawn between a disappearance investigation and the situation where the police know the precise nature of the crime and are conducting an investigation to establish a person’s involvement in that already ascertained crime. I welcome the opportunity to join my dissenting colleagues in recognizing the compelling nature of those practicalities which makes this case distinguishable from prior precedents of this court. (People v Rogers, supra; People v Skinner, supra.)
To hold otherwise would constitute yet another expansion of a person’s right to counsel in a noncustodial setting during the course of an investigation. In my view, this would be an unwarranted expansion of the right to counsel which, once again, would elevate the rights of the potential defendant above the compelling interests of the State. *180 (People v Rogers, supra.) Furthermore, it may well have the dangerous effect of barring the police not only from investigating a crime, but also from aiding a citizen who is the victim of criminal activity.
For all of these reasons, I would affirm the order of the Appellate Division.

 I see no reason to require a hearing on the question of whether or not an emergency existed. In my view, an emergency existed by virtue of the missing persons investigation. Thus, the scope of right to counsel in light of the emergency nature of the investigation can be addressed by this court even though it was not considered by the courts below. The very nature of a missing persons investigation, combined with the facts as found by the courts below, clearly constitutes an emergency situation.