Bellacosa, J.
(dissenting). The prosecution brazenly violated defendant’s right to counsel in this case. Its conduct in that regard should not be countenanced, especially not by this court, because of the unwavering efficacy we have given to this fundamental constitutional bulwark.
Very simply, the defendant’s bribery of his former business colleague, Wallace, for which defendant stands convicted, was not a "new crime”, legally or factually. The term "new crime” *168 is a legal phrase of art here. It takes on legal significance in this case to qualify as an exception (People v Middleton, 54 NY2d 474) to the otherwise inviolate rule that the prosecution and its agents may not inquire of or gather evidence from a defendant who has, to its conceded knowledge, hired counsel for legal protection against particular prosecutorial pursuit (People v Skinner, 52 NY2d 24). The undisturbed findings of fact from the courts below include: (1) that the crime, which the majority classifies as "new”, was rather a continuing one begun prior to the recording of the critical telephone conversation between defendant and his former colleague, who by then was a cooperating police agent; (2) that the Attorney-General was investigating that very crime, seeking to get concrete evidence of its commission in order to prosecute; and (3) that the Attorney-General was informed that defense counsel had been retained for the very investigation against defendant, which already included a formal Grand Jury subpoena to defendant for his business records.
The facts are as essentially set forth in the majority opinion, but I emphasize and encapsulate specific features as bearing on the counsel deprivation issue, which is the only point on which I disagree with the majority. I conclude that the recorded telephone conversation, containing admissions by defendant to his former colleague working on behalf of the Attorney-General, should be suppressed as acquired directly and intentionally in violation of defendant’s New York constitutional counsel rights.
In 1985, the Attorney-General’s office commenced an investigation into allegations that The Mine Shaft, a New York City social club, failed to pay taxes. On November 13, Walter Wallace, manager of The Mine Shaft, contacted the Attorney-General’s office to discuss the investigation. Wallace told an Assistant Attorney-General of a November 8 meeting with defendant Bell and his codefendants Dobson and Caravello, the owners and operators of the club, during which Bell told Wallace to take a vacation. Wallace was given $2,000 and told to keep in touch and that he would be taken care of. After meeting with the Assistant Attorney-General, Wallace left for Ohio.
On November 19, subpoenas were served on defendant Bell and Caravello calling for the production of the records of The Mine Shaft.
The next morning, November 20, Bell’s attorney contacted *169 the Attorney-General’s office to inform the prosecution that he had been retained by Bell in connection with the Grand Jury investigation. Assistant Attorney-General Saslaw testified at the trial with respect to this critical development as follows:
"First of all, it wasn’t a legal problem I was not aware of and I didn’t consider it to be a significant problem. I did consider that there was — that at that particular point, as to the investigation of sales taxes that Mr. Bell was represented by counsel and that no further interviews of Mr. Bell by the office or by agents of the office could take place
* * *
"At that point — assuming what Mr. Wallace was saying was true indicated that a crime might be in the process of being committed.” (Record on app, at A-361, A-363 [emphasis added].)
Later that day, an investigator from the Attorney-General’s office met with Wallace in Ohio and Wallace signed a cooperation agreement. During the evening of November 20, Wallace, at the direction of the Attorney-General’s investigator, placed several phone calls to New York City. Two of the calls were made to Caravello. During these conversations with Caravello, Wallace indicated a need for more money and further instructions as to how long he should stay away. He gave Caravello a phone number where he could be reached the next day. On the afternoon of November 21, defendant Bell, having been told that Wallace was waiting for further instructions, placed a telephone call from New York to Wallace in Ohio. The conversation, monitored and recorded by Wallace for the prosecution, included Bell telling Wallace what to say if he were questioned by the authorities about the operation of The Mine Shaft. Bell also repeated to Wallace earlier "advice” to stay away for awhile and again that he would be taken care of.
The precedents of this court instruct that when a person not in custody has obtained counsel on a matter under investigation and the police have knowledge of such representation, the target may not be questioned about the subject matter of the investigation in the absence of counsel (People v Skinner, 52 NY2d 24, supra). He has, after all, unequivocally invoked his guaranteed protection of counsel for dealing with the authorities on his behalf and they, in turn, are legally sealed off from dealing with him other than through his counsel. To be sure, *170 we have carved out a policy exception that this right to counsel is not violated when the otherwise forbidden communications concern a "new crime” (People v Middleton, 54 NY2d 474, supra; People v Ferrara, 54 NY2d 498, 508).
In People v Mealer (57 NY2d 214, cert denied 460 US 1024), we went so far as to apply the "new crime” exception to a new crime in progress. In Mealer, defendant was indicted for murder and incarcerated while awaiting trial. His right to counsel on the murder charge had attached. While imprisoned, defendant arranged to meet with a prosecution witness in an effort to get the witness to alter his testimony. The witness informed the police and was instructed to "play along” if offered a bribe. A bribe was offered, and in his subsequent trial for bribery, defendant moved to suppress his statements on the ground that he could not be interrogated in the absence of counsel. We held that there was no violation because the police were "investigating a new crime in progress”.
The instant case must be approached from the opposite end of Mealer (supra). Here, although the bribery scheme was "in progress”, it was not a "new crime”. It was the crime. It had been in progress and was already part of the Attorney-General’s investigation at the time at which defendant’s right to counsel had attached.
The sole issue on which I thus depart from the majority is whether the bribing of Wallace by Bell can be considered a new crime within the exception precedents of this State’s revered right to counsel protections. I conclude it cannot and should not possibly be so here.
The trial court specifically found that by the time of the recorded conversation between Bell and Wallace, the defendant’s bribery scheme was in fact the subject of the Attorney-General’s concerted investigation. As if that were not enough, there is an undisturbed, prosecutorially conceded, fact finding that Bell’s attorney informed the Attorney-General prior to the arranged, recorded conversation that Bell had retained him with respect to the Grand Jury investigation. We have no power or reason to dispute or contradict these dispositive facts. Thus, defendant Bell’s right to counsel had attached to a past or, at the very least, to an ongoing crime of bribery — not a new crime as in People v Middleton (54 NY2d 474, supra) or a new ongoing one as in People v Mealer (57 NY2d 214, cert denied 460 US 1024, supra).
*171 Thus, this case does not fit into either category of "new crime” exceptions to the Skinner case. Furthermore, People v Sanders (56 NY2d 51) is completely inapplicable, not for the reason stated by the majority (majority opn, at 162) but because it pertains to an already completed crime.
The prosecution understandably tries to put the best face on the entire fact picture relevant to the counsel violation issue. It choreographs the bribe charge as an isolated matter occurring only on November 21 when, in fact, the bribe effort on that day was a replication of an endeavor between the parties going back to November 8. However convenient and successful that prosecutorial strategy may be, it cannot in the end obscure the realistic assessment of what was really perpetrated here: the purposeful evasion of defendant’s counsel right by the prosecutor and by its acquired agent, Wallace.
Moreover, the majority wrongly lays at the doorstep of my analysis a consequential immunity from prosecution. The "immunity”, such as it is, (1) is not against prosecution for bribery, but against the use of illegally acquired evidence snared directly from the defendant himself after he has interposed counsel of his choice between himself and the forces of the government in a targeted investigation; and (2) derives not from my opinion but from the Constitution itself and its implementing mechanism, the exclusionary rule, a protection in our adversarial system which guarantees the defendant protection by an attorney from being pursued and prosecuted with evidence acquired from himself after the attorney has been secured. Finally, the counsel protection rule does not require a "halt” to a legitimate investigation; it bars the prosecution from inquisitorially pursuing, actively instigating, and proving its case out of the defendant’s own counsel-protected mouth, which is hardly a novel concept under our law.
The flagrancy of the prosecution’s evasion of defendant’s counsel right is proven out of his mouth in testimony at trial —he subjectively and cavalierly "did not consider” the interposition of defense counsel "to be a significant problem”. It escapes me why, in view of our court’s proud history of undeviating allegiance to this critical area of constitutional protection, the majority should now extend the "new crime” exception and bestow its imprimatur on the prosecution’s guileful evasion of this defendant’s constitutional counsel protection.
The "new crime” exception applied here in any event enve *172 lopes the principle. Harkening to the lessons expressed in People v Hobson (39 NY2d 479, 485-488) dealing directly with deviations from this State’s right to counsel protections and precedents, I conclude with a rhetorical query: Might this case be another "errant footprint” like Robles, Lopez and Wooden (id., at 488), which will require course correction in some future case, as we forthrightly had to do in Hobson itself? That, however, will not restore the lost right to the present defendant or to anyone else who will be similarly deprived by application of the precedent made in his case.
I would reverse on the defendant’s appeal, grant suppression and remit for such further proceedings as may be appropriate.
Chief Judge Wachtler and Judges Kaye, Alexander and Hancock, Jr., concur with Judge Simons; Judge Bellacosa dissents and votes to reverse on defendant’s appeal in a separate opinion; Judge Titone taking no part.
Order modified by reinstating the sentence and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.