OPINION OF THE COURT
Afred H. Kleiman, J.
Defendant was convicted, after a trial by jury, of the crime of murder in the second degree and was sentenced to 20 years to life on January 29, 1990.
*962 Prior to the trial, the court held two hearings with respect to certain oral, written and tape-recorded statements obtained by an informer, the police and a police agent. This court made oral findings on the record following each hearing, reserving the right, with consent of counsel, to make written formal findings following the trial.
THE ISSUE
Assuming this court were to credit the testimony of Wasserman and Stern that the defendant was represented by counsel in 1980 in connection with Arthur Katz’s death, and assuming that DaSilva was aware of same, the issue presented is as follows: Is knowledge, with respect to counsel being retained by defendant, gained by a person eight years before he becomes an agent of the police, imputed to the police?
THE BURDEN OF PROOF
After the People have met their burden of going forward to justify police conduct, the defendant has the ultimate burden to prove that he was represented by counsel at the time of noncustodial interrogation (People v Amato, 140 Misc 2d 1059, 1061 [Sup Ct, Queens County 1988, Friedmann, J.]) and that the police had actual or imputed knowledge of such representation. (See, People v Rosa, 65 NY2d 380, 387 [1985]; see also, my opinion People v Medina, 138 Misc 2d 653, 660 [1988], affd 146 AD2d 344 [1989].)
CONCLUSIONS OF LAW
At the outset, this court notes that defendant concedes that his statements were made at a time when he was not in custody. Hence, this court is dealing with a noncustodial right to counsel claim. The leading case in this area is People v Skinner (52 NY2d 24).
In People v Skinner (supra, at 27), the attorney of the defendant, at a time when the defendant was still just a criminal suspect, notified the police that he represented the defendant and specifically instructed them not to question defendant in his absence. Thereafter, the police elicited statements from the defendant outside of his attorney’s presence. This conduct on the part of the police led the Court of Appeals to establish the following rule regarding noncustodial interrogation: "[W]here * * * a defendant is known to have invoked the right to and obtained the services of counsel on the matter *963 about which the person is questioned, the State may not use statements elicited from that person in the absence of a waiver of counsel made in the presence of the attorney” (People v Skinner, supra, 52 NY2d, at 32).
Since Skinner (supra), the Court of Appeals has made it clear that noncustodial statements are admissible "unless [the suspect has] retained counsel on the matter under investigation to the knowledge of the police * * * or [has] unequivocally informed the police of his intention to do so” (People v Rowell, 59 NY2d 727, 730 [1983]; see, People v Johnson, 55 NY2d 931, 933 [1982], revg 79 AD2d 201, 203, 204 [4th Dept 1981] on dissenting opn at App Div). The source from which knowledge by the police of such representation may be acquired is immaterial as long as the police have been adequately apprised of such representation or the intent to retain counsel. The right to counsel will attach under Skinner (supra) where the authorities have knowledge that the suspect has retained counsel in the matter under investigation regardless of whether the attorney has directly, contacted the authorities (see, People v Ellis, 58 NY2d 748, 750 [1982]; People v Short, 110 AD2d 205, 209 [2d Dept 1985]).
Defendant urges this court to impute knowledge of his alleged representation by counsel in 1980 to the police in 1988. The basis of defendant’s argument is his claim that a Robert DaSilva, who became a police agent in 1988, but who had worked for defendant in 1980, became aware in 1980 that defendant had retained Sol Wasserman, Esq., an attorney, who also happened to be a social friend of defendant, to represent him if the police questioned defendant with respect to Katz’s death in 1980. Mr. DaSilva, according to defendant and Mr. Wasserman, was present at a meeting between Mr. Wasserman and defendant in 1980 wherein they discussed what defendant should do if the police came to question him, and Wasserman testified he had further telephone conversations with DaSilva discussing what should be done if the police attempted to contact the defendant.
In the instant case, defendant concedes that he was not in custody at the times he made tape-recorded statements to Robert DaSilva. Moreover, defendant does not contend that either he or any attorney retained to represent him with respect to Arthur Katz’s homicide ever informed the police of such representation until the day defendant was arrested in 1988. In fact, defendant himself admitted that he did not want the police to know that he had an attorney in this case lest it *964 cast suspicion upon him. Additionally, even though defendant was aware that the police were again investigating Katz’s murder in 1988, defendant had not discussed this case over the telephone with Wasserman since the one or two times in 1980. Yet, under the rules of principal and agent, defendant argues Mr. DaSilva’s knowledge in 1980 should be imputed to the police when he becomes an agent in 1988.
Even if this court was to have found the testimony with respect to conversations between defendant and Wasserman to be credible, it still strains credulity that DaSilva, who was defendant’s accomplice, was aware that defendant had retained counsel in 1980 with respect to Katz’s murder. Defendant argues that based on his and Wasserman’s testimony with regard to the 1980 conversations, the rules of principal-agency would be applicable to this case, and therefore, DaSilva’s knowledge of Wasserman’s representation of defendant with respect to Katz’s death would be imputed to the police. However, even in civil proceedings it has been held that a "principal is not charged with his agent’s knowledge obtained before he became an agent * * * unless the information was in the agent’s mind when he acted for the principal on the occasion under scrutiny” (Phelan v Middle States Oil Corp., 210 F2d 360, 365-366 [2d Cir 1954]; see, Title Guar. & Trust Co. v Pam, 232 NY 441, 457 [1922] [Cardozo, J.]). There was no evidence before this court that DaSilva had acquired his knowledge of defendant’s alleged representation while "acting within the scope of his agency” (see, Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]). Indeed, the contrary is true since it is conceded that DaSilva did not become a police agent until eight years after he allegedly gained this knowledge. Furthermore, there was no evidence which would even warrant an inference that such information "was in the agent’s mind” at the time he acted for the police in 1988, considering that he was not a law enforcement officer, given the fact that DaSilva’s alleged knowledge consisted of being present at one meeting between defendant and Wasserman and a couple of telephone calls all in 1980, there is no reason to believe he even remembered the conversations or thought about them when he was working for the police. Indeed, given the fact that DaSilva was a layperson and unaware of the legal significance of Wasserman’s alleged conversations with defendant about representation, the significance of such conversations would not be apparent to him. In any event, this court does not believe that the "principal-agent” laws are applicable to *965 the facts in this criminal case, nor has any case been brought to this court’s attention, either civil or criminal, where knowledge of an agent gained long before an agency relationship existed, was imputed to the principal.
However, even if this court had found credible all of the testimony submitted on behalf of defendant, this court would still not be prepared to extend the Skinner doctrine to impute a police agent’s knowledge of a defendant’s representation by counsel to the police where such knowledge was obtained before any agency relationship existed, and before the defendant was in custody.
Additionally, with respect to whether knowledge should be imputed to the police, the standards set forth by the Court of Appeals in People v Rogers (48 NY2d 167 [1979]), People v Bartolomeo (53 NY2d 225 [1981]) and People v Bertolo (65 NY2d 111 [1985]) are helpful.
In People v Rogers (supra) and People v Bartolomeo (supra), the Court of Appeals held that uncounseled waivers of a custodial suspect’s right to counsel are ineffective when the police either are aware of the suspect’s representation on pending charges (People v Rogers, supra) or have actual knowledge of a recent arrest and fail to inquire whether the suspect is still represented in the matter (People v Bartolomeo, supra). In those two cases, the court charged law enforcement personnel with the knowledge that would be gained through minimal efforts to ascertain the status of matters within their knowledge (see, People v Bartolomeo, supra, 53 NY2d, at 231). However, the same court later held that "[a]bsent some actual knowledge * * * of either defendant’s representation by counsel or the pendency of prior charges, the police have no affirmative duty to cease their questioning or inquire whether defendant has an attorney” (People v Bertolo, supra, at 119). Similarly, where the police do not have actual knowledge of defendant’s representation, "there is no warrant for imputing constructive knowledge that the suspect already has legal counsel absent some measure of bad faith on their part” (People v Bertolo, supra, 65 NY2d, at 120). Interestingly, in Bertolo, the court, in determining when constructive knowledge of defendant’s representation should be imputed to the police, took into account the temporal remoteness of defendant’s prior charges (see, People v Bertolo, supra, 65 NY2d, at 118-119).
In this case, the police had no actual knowledge of defen *966 dant’s alleged representation. Indeed, it appears from defendant’s and Wasserman’s testimony that they went out of their way to hide such alleged representation lest it cast suspicion on defendant. Nor can it be said that the police acted in bad faith given the remoteness in time from the crime of which the police first suspected defendant. Clearly, the police were not guilty of any misfeasance in this case (compare, People v Knapp, 57 NY2d 161, 173 [1982], cert denied 462 US 1106 [knowledge imputed to police where there was a surreptitious effort by the police to accomplish through agents what they could not do directly]; People v Pinzon, 44 NY2d 458, 464 [1978] [knowledge imputed where counsel’s efforts to reach defendant were frustrated by police misinformation and inadequate operating procedures]; People v Ramos, 40 NY2d 610, 617-618 [1976] [knowledge imputed where police chose to resolve their somewhat questionable doubts against defendant’s having obtained counsel]). Hence, there is simply no justification for imputing DaSilva’s supposed knowledge to the police where the police conducted their investigation and questioning in good faith and with due regard for defendant’s rights.
Finally, it is worth noting that generally "[t]aping conversations between a defendant not in custody and an accomplice-informant involves no violation of defendant’s right to counsel” (People v Farruggia, 61 NY2d 775, 777 [1984]). The instant case proves to be no exception to the general rule since this court finds that there was no invocation by defendant of his right to counsel. There was no retention of counsel to represent defendant until he was under arrest and there was no actual or imputed knowledge on the part of the police department that he had ever spoken with counsel prior to his arrest. Hence, the rule formulated in People v Skinner (52 NY2d 24, supra) is inapplicable. Therefore, this motion to suppress the tape-recorded statements was in all respects denied.
Addendum (July 13, 1990)
Subsequent to the writing of this opinion the Court of Appeals overruled People v Bartolomeo (53 NY2d 225, supra) in People v Bing (76 NY2d 331 [July 2, 1990]). However, the *967 fact that Bartolomeo has been overruled does not affect this court’s decision as its reasoning was cited merely as an analogy as to this court’s reasoning on the issue of imputation of knowledge to the police.
[Portions of opinion omitted for purposes of publication.]