OPINION OF THE COURT
Allen Murray Myers, J.
On this court’s own motion, the decision on the motion to suppress, signed on March 12, 1982, is recalled and the following is substituted.
This is a motion to suppress four taped conversations between the defendant Robert L. Steele and two police agents under CPLR 60.45. Two of these conversations were recorded on the telephone, one on March 25, 1980 and one on April 2, 1980. On April 2, 1980 and July 24, 1980 there were two additional conversations recorded face to face.
It is alleged that the defendant’s right to counsel under the New York State line of cases (beginning with People v Donovan, 13 NY2d 148) was violated because, contrary to the rule laid down by the Court of Appeals in People v Skinner (52 NY2d 24), the investigating Assistant District Attorney and his agents knew that the defendant Steele had retained counsel in this and related investigations, but in spite of this knowledge, they obtained said taped statements from the defendant Steele without the presence of *659 his counsel or without the defendant’s knowing and voluntary waiver of his right to be represented by counsel during the investigation.
This was an investigation of the defendant Steele and his firm, I.B.P.I., Ltd., which was engaged in providing private security protection and armed guards. The investigation was conducted by the New York City Police Department License Division which is in charge of issuing gun permits. The investigation came about because of an anonymous letter accusing defendant Steele and his firm of criminally obtaining pistol permits for persons not actually employed by I.B.P.I., Ltd. (The following statement of facts was culled from the testimony at the hearing before this court on December 21 and December 22, 1981 and embodied in defendant’s proposed findings of fact I-XIII which this court hereby adopts as its findings of fact on this motion. Essentially, these facts are not disputed by the prosecution.)
FACTS
When defendant Steele learned of the investigation in August of 1979, he retained the law firm of Litman, Friedman, Kaufman & Asche to represent him and his corporation.
Early in September, 1979, a police official of the license division of the police department visited defendant Steele at his office and took some documents from him. As a result, thereafter, between September 10 and September 21, 1979, Mr. Litman advised Inspector Francis Hall, the commanding officer of the license division, that his law firm represented Mr. Steele and I.B.P.I., Ltd., and asked what the investigation was about and whether the charges would be referred elsewhere. Inspector Hall replied that he, Mr. Litman, would receive notice of the commencement of any formal proceedings against his client.
In August of 1979, Inspector Hall began an investigation of whether Mr. Steele had unlawfully obtained pistol permits for persons not employed by I.B.P.I., Ltd., for perjury and filing false documents. Although Inspector Hall had been advised by Mr. Litman of Steele’s engagement of counsel 7 to 10 days earlier, he went to defendant Steele’s *660 office on September 25, 1979 to question him about the pistol permit matter.
Inspector Hall proceeded with the administrative hearings in the police department license division. In connection with these hearings, Mr. Litman and Mr. Kaufman spoke to Mr. Gordon Friedlander, a pistol permit holder scheduled to testify at these hearings. On October 9, 1979, Mr. Litman and Mr. Kaufman advised Mr. Friedlander that they represented the corporation defendant and Mr. Steele.
At the hearings on October 18, Mr. Litman represented the corporation defendant and asked Detective Joseph McLaren if there would be a referral of the pistol permit inquiry from the police department to the District Attorney with respect to his client Mr. Stéele. Mr. Litman asked the same question of Detective McLaren again on November 16.
On January 28, 1980, the matter was referred to the District Attorney of New York County and Assistant District Attorney Martin Marcus, in charge of the criminal investigation, arranged a meeting on March 21, 1980 with Gordon Friedlander. Before the meeting, Assistant District Attorney Marcus read a report by Inspector Hall containing a statement that Mr. Steele was represented by Mr. Litman in connection with the police department inquiry. At the March 21, 1980 meeting, Mr. Friedlander told Assistant District Attorney Marcus that Mr. Steele was represented by Mr. Litman. In spite of this, Assistant District Attorney Marcus asked Mr. Friedlander, who was acting as a police agent, to wear a concealed tape recorder and attempt to have defendant Steele make incriminatory statements. Assistant District Attorney Marcus gave Mr. Friedlander precise instructions about how to get defendant Steele to talk about his dealings in 1978 and 1979.
These findings further indicate that agents of the police department had actual knowledge of Mr. Litman’s firm representing defendant Steele in all aspects of the permit inquiry as far back as September, 1979.
*661 ISSUE
The issue before the court is should the rule in People v Skinner (52 NY2d 24) be applied to the taped statements made to Mr. Friedlander in the undercover investigation?
It is claimed by defendant Steele that the recent case of People v Skinner (supra) and People v Hobson (39 NY2d 479) are controlling. These cases stand for the proposition that when law enforcement officials know that the suspect had engaged counsel in an investigation, they are precluded from questioning him without presence of counsel.
On the other hand, the prosecution contends that the controlling authorities are People v Ferrara (54 NY2d 498) and People v Middleton (54 NY2d 474) both decided December 22, 1981, which hold that the right to counsel, as defined in People v Skinner (supra), may not be used to shield the accused against the use of statements made to an informer or undercover agent for the purpose of planning or carrying out new crimes.
The rule, as set out in People v Skinner (supra), apparently applies to the case at bar. The rule, as stated in Skinner (supra, p 32), is as follows: “where * * * a defendant is known to have invoked the right to and obtained the services of counsel on the matter about which the person is questioned, the State may not use statements elicited from that person in the absence of a waiver of counsel made in the presence of the attorney”.
The District Attorney argues that the Skinner rule has been modified by the Ferrara and Middleton cases; Ferrara (supra) held that the retaining of counsel in a Grand Jury inquiry does not preclude investigation by way of taped statements used to discover a plan to commit a new crime, not the one for which counsel was retained.
In the Middleton case, the defendant requested counsel after his arrest for a motor vehicle violation. Subsequently, at the scene of his arrest, he offered a bribe to the arresting officer. The Court of Appeals held that the defendant could then be questioned by the officer as to anything legitimately related to the bribe offer, even though he had requested counsel previously for the motor vehicle violation.
*662 In Ferrara and Middleton (supra), the Court of Appeals found the significant factor was that a second, independent crime was being investigated. There was a new crime committed after the first crime for which counsel had been retained. The importance of the second crime as a deciding factor here is that the accused’s right to counsel must be protected as to a past crime, but certainly such a right cannot be used to provide him with immunity for a new crime committed in the very presence of the .officers or police agents.
In the case at bar, however, although the Assistant District Attorney mentions in his memorandum that defendant Steele’s conversations taped by Friedlander “smacks of subornation of perjury”, a new crime, it is obvious to this court that there is no second crime nor was one charged in the indictment. I hold that the statements involved the very subjects as were involved in the administrative hearing before the New York City Police Department License Division, that is, the issuance of pistol permits to nonemployees of I.B.P.I., Ltd.
It involved the very same review of gun applications in which the police department was aware that the defendants Steele and I.B.P.I., Ltd., were represented by counsel Jack Litman. The investigation involved past-committed crimes for which the defendant has since been indicted. As Assistant District Attorney Marcus stated in the hearing before this court, he told Mr. Friedlander to make Mr. Steele “talk about his dealings * * * back in 1978 and 1979”. ’
In People v Schwimmer (85 AD2d 549), the rationale in People v Ferrara (supra) and People v Middleton (supra) was used again. The court there found (p 549) that “investigation was separate and apart from the underlying crime for which the defendant now stands convicted.” This finding distinguishes Schwimmer from the case at bar where I find that the second investigation and the crime for which the defendant was originally investigated were the same.
Finally, in People v Brooks (83 AD2d 349) the Appellate Division reversed the conviction and granted a motion to suppress statements that the police agents elicited surrep *663 titiously from the defendant after he had been arrested, retained counsel and was released on bail.
The statements in People v Brooks (supra) were recorded when defendant telephoned an alleged accomplice who, unknown to him, was acting as a police informant in a stakeout designed to capture the other accomplices. In that case, the Appellate Division suppressed the taped statements, even though all of the calls were made by Brooks himself, and despite the fact that Brooks was not originally the object of the investigation. The police agent was instructed to listen and not to seek incriminatory admission and, again, despite the fact that defendant Brooks sought to obstruct justice and suborn perjury by asking the police agent to falsely testify that Brooks had nothing to do with the crimes, the court suppressed his statements.
In the case at bar, Mr. Friedlander, the undercover agent, took an active, not a passive role in attempting to get incriminating statements about defendant Steele’s past conduct. It appears to this court that the case at bar is even stronger for suppression than was People v Brooks (supra), where the Appellate Division granted suppression. A review of all of these cases and our adoption of defendant’s findings of fact convinces this court that these statements should be suppressed.
The District Attorney cautions this court against “extending” the rule in Skinner (52 NY2d 24, supra) to administrative hearings.
In other words, although the police were aware that defendant Steele was represented by counsel hitman’s firm for the administrative hearings they should be permitted to question the defendant in regard to the same acts and investigation for which they knew he hired counsel.
But this court holds that it is not the type of proceeding which is significant, it is the protection of the right to counsel under the New York State Donovan-Arthur-Hob-son line of cases (People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479, supra) which is to be protected. Indeed, in People v Skinner (supra, pp 29-30) itself, Chief Judge Cooke uses the example of the “responsibility of attorneys in civil matters not to *664 communicate on the subject of the representation with an individual known to be represented by an attorney on the matter (see New York State Bar Association Code of Professional Responsibility, DR 7-104, subd A, par [1]; see, also, ABA Code of Professional Responsibility, DR 7-104, subd A, par [1]). We would be hard pressed logically to proscribe such conduct in the civil context yet blithely overlook it in the criminal sphere (see People v Hobson, 39 NY2d 479, 484-485, supra)” Certainly the analogy applies to the administrative hearing conducted by the police department which could and did refer matters to the District Attorney.
In People v Bartolomeo (53 NY2d 225) the Court of Appeals held (on June 16,1981) that where a suspect being questioned had been arrested nine days before by the same law enforcement agency on an unrelated charge, statements obtained as a result of interrogation must be suppressed if the suspect was represented by an attorney, even though the fact of such representation was unknown to the officer. The investigating detectives were charged with the obligation to inquire whether defendant was represented by counsel on that unrelated charge.
To the same effect is People v Smith (54 NY2d 954) where the questioning officer knew that defendant had been arrested eight months earlier and he “assumed” that defendant had an attorney, he had an obligation to inquire whether the defendant was represented in that earlier crime. As Justice Bloom so aptly stated in People v Jenkins (85 AD2d 265, 286), “Indeed, so zealous have our courts been to protect the right to counsel that where a police officer has sufficient reason to trigger the belief that legal representation exists, even though on an unrelated matter, inquiry is mandated and if such inquiry discloses the fact of legal representation, interrogation is precluded in the absence of counsel (People v Smith, 54 NY2d 954).”
How much greater was the duty of the District Attorney’s office where they knew of defendant Steele’s representation by Mr. hitman’s law firm on the same acts, on related matters, albeit “only” on administrative inquiry which easily could have (and did) lead to a criminal indictment. I hold, therefore, that in this case, where the inquiry *665 dealt with the same matters in the criminal investigation as in the administrative hearing, and where law enforcement officers had actual knowledge of the legal representation, the statements made without the knowledge of the defendant and without his counsel present or his waiver of the right to counsel, must be and are suppressed.