OPINION OF THE COURT
Mathilde C. Bersani, J.
Defendant herein is charged with assault in the third degree in violation of section 120.00 of the Penal Law involving an alleged incident of spanking his three-year-old stepson on October 13,1982. We now address the issues raised by the defendant’s motion to suppress certain statements he made to a police investigator on October 21,1982. The following facts were adduced by the court from the relevant papers and the testimony taken at the suppression hearing.
On October 19, 1982, the defendant’s stepson was removed from the family home by representatives of the Department of Social Services-Children’s Division and the Syracuse Police Department. The fact that Children’s Division employees had previously observed bruises on the youngster served as a basis for the removal and for the simultaneous filing of a neglect petition with the Onondaga Cpunty Family Court which named defendant and his wife as respondents.
*718 On October 20, 1982, a copy of this filed neglect petition was annexed to a summons for service upon the respondent/ defendant herein directing him to appear in Family Court on October 27, 1982. The summons additionally informed respondent/defendant Smith that, in accordance with the law, he had a right to an attorney, that he would be advised of same when he appeared and that it was “wise” and “helpful” to contact an attorney and have one present at court.
On October 21, 1982, this neglect proceeding was brought to the attention of Syracuse Police Investigator Dunseath. Apparently, all article 10 of the Family Court Act proceedings are referred, upon their filing in Family Court, to the Syracuse police for criminal investigation and potential prosecution. Investigator Dunseath proceeded to the Smith residence and, not finding the respondent/defendant at home, left his card. Smith contacted him and permitted a return visit. Smith also contacted a woman whom he has received family counseling from who also arrived at the family home.
Smith, upon being questioned by Dunseath and urged to “co-operate” and “tell the truth” by his counselor, gave a written statement of his interpretation of the alleged “assault” on his stepson. We note here that defendant has a learning-comprehension level disability recognized by his counselor. Smith was orally given his Miranda rights and also read these warnings to himself and acknowledged same prior to making the statement. The record is unclear, but it seems that defendant was told he was under arrest prior to executing the statement.
After a thorough analysis of the applicable law and newly evolving standards, the court determines that suppression of the defendant’s statements must be granted. We rely on two underlying premises in so doing: first, the fact that a Family Court proceeding had commenced and second, the fact that the instant criminal investigation was so inextricably interwoven with that Family Court proceeding as to make a distinction between the two impossible.
It matters not to our final determination that a Family Court proceeding, the prior proceeding here, is not per se *719 criminal. (Matter of Ella B. [Kurils-JeriB.], 30 NY2d 352.) After all, “it is not the type of proceeding which is significant, it is the protection of the right to counsel under the New York State Donovan-Arthur-Hobson line of cases (People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479, supra) which is to be protected.” (People v Steele, 113 Misc 2d 658, 663; People v Townes, 41 NY2d 97.)
Indeed, the case at bar is even stronger for recognizing the attachment of the indelible right to counsel than was People v Steele, there involving “ 'only5 [an] administrative inquiry which easily could have (and did) lead to a criminal indictment.” (People v Steele, supra, at p 664; People v Skinner, 52 NY2d 24, 29-30.) Here we are confronted with an investigation by the Department of Social Services turned accusatory through the formal filing of a neglect petition in Family Court. (People v Samuels, 49 NY2d 218.) Additionally, there must be recognition of the fundamental rights and interests involved in a proceeding whereby a parent/child relationship is affected.
Most importantly, on these facts, is that the Family Court process itself has recognized the critical stage these proceedings have reached by their notice to the respondents that they have a right to an attorney and their urging of respondents to seek legal assistance prior to the actual appearance. Clearly, this indicates that any grounding of the right to counsel upon such fortuitous criteria as an initial appearance in court serves only to debase that right to nothing more than a race for the wary. (People v Settles, 46 NY2d 154, 164.)
Were Roger Smith to have retained counsel when his stepson was removed from his custody we would invoke the rationale of People v Steele (supra) and disallow any subsequently given statements. We cannot penalize Mr. Smith because his naiveté prevented his seeking counsel.
The fundamental rights and interests of Roger Smith had been formally drawn into jeopardy. (People v Settles, supra, at pp 163-165; People v Blake, 35 NY2d 331, 339.) Once this accusatory step was taken, he could not be questioned regarding matters “so interrelated and intertwined” with, and not fairly separable from the neglect *720 proceeding. (People v Miller, 54 NY2d 616; People v Ermo, 47 NY2d 863; People v Steele, 113 Misc 2d 658, supra.) In essence, the two proceedings were so related* that to question one is tantamount to questioning on the other once the right to counsel had attached. Again, this is so basic a transgression from Donovan-Arthur-Hobson rule that we must suppress.

 The rationale of the court is based upon the fact that these proceedings were related; as opposed to the rationale enunciated in People v Kazmarick (52 NY2d 322) and further discussed in People v Cole (89 AD2d 627) where the standard for right to counsel in two unrelated proceedings was established.