THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOHN A. COSTELLO, Appellant.

Third Department, May 10, 1984

APPEARANCES OF COUNSEL

*Harry T. Shamlian* (*Eugene P. Grimmick* of counsel), for
appellant.

*Charles J. Wilcox, District Attorney* (*Richard L. Nabozny*
of counsel), for respondent.

OPINION OF THE COURT

MAHONEY, P. J.

On April 9, 1981, defendant shot Ralph Passonno, his second wife's former husband, and Maurice Kelly. Although Kelly died, Passonno survived and testified against defendant. A judgment of the Rensselaer County Court, rendered January 21, 1982, upon a verdict convicting defendant of the crimes of murder in the second degree and attempted murder in the second degree, was affirmed by this court (*People v Costello,* 92 AD2d 947). Defendant is presently serving two concurrent indeterminate prison terms of 25 years to life and 12½ years to 25 years.

While incarcerated in the Rensselaer County Jail awaiting trial on the indictment that ultimately resulted in the conviction noted above, defendant told another inmate that he would be interested in hiring someone to finally dispose of Passonno. The inmate relayed this information to another inmate named Wayne Alderman, who later occupied the same tier as defendant. When defendant approached Alderman with his scheme, the latter offered his services to the police as an informer. He was equipped with an eavesdropping device and, in conversations with defendant, recorded incriminating statements. Defendant was then released on $50,000 bail pending trial on the original indictment. The police, having determined that the investigation should continue after defendant's release on bail, caused their inmate informer to enlist the aid of his girlfriend by having her contact defendant upon his release. She did so over a tapped telephone and gave defendant the telephone number of a supposed professional killer. A police officer playing the role of the killer called defendant and arranged a meeting. At this meeting, defendant gave the officer $15,000 for the murder of Passonno. Defendant was arrested and subsequently indicted for the crimes of attempted murder in the second degree, conspiracy in the second degree and criminal solicitation in the second degree.

When defendant was arraigned on June 6, 1981, the prosecution asserted that it did not intend to offer any "oral and written statements given by defendant to police after being in custody and arrested on April 30, 1981", the date

defendant made the $15,000 offer to the police officer. Nevertheless, the chief prosecutor told defense counsel about the existence of tapes of defendant's conversations with the police informer and defense counsel relayed this information to defendant. Defendant then moved to suppress the evidence gathered by the informer. At this juncture, proceedings were stayed pending the outcome of the trial of the first indictment. After defendant's conviction was affirmed on appeal, defendant's retained counsel withdrew and defendant was assigned counsel. The new counsel was allowed to hear the tapes of defendant's conversations with the informer and moved for an audibility hearing. Assigned counsel subsequently withdrew this motion, believing that the prosecutor had violated CPL 710.30 and that a motion to suppress, citing lack of notice, would result in the exclusion of this damaging evidence.

At trial, during the direct examination of the informer, defendant renewed his motion to suppress. While the trial court denied the motion, it did grant defendant's contemporaneous motion for a suppression hearing. At the conclusion of the suppression hearing, which dealt with issues of right to counsel, the court ruled the recorded evidence to be admissible. At this point, defendant withdrew his prior plea of not guilty and the court accepted a plea of guilty. Defendant was given 7- to 21-year sentences on both the attempted murder and criminal solicitation charges, and a 2⅓- to 7-year sentence on the conspiracy charge. These three sentences were to run concurrent to each other and consecutive to the sentences imposed for defendant's previous conviction.

On this appeal, defendant argues that his statements made to an informer while both were in custody should have been suppressed, that the prosecutor failed to provide the notice to defendant of the People's intention to offer the recorded evidence as required by CPL 710.30, and that the sentences imposed were harsh and excessive.

■ The trial court's ruling that the statements were not taken in violation of defendant's right to counsel is impervious to attack in light of a recent ruling by the Court of Appeals. In *People v Mealer* (57 NY2d 214, cert den __ US __, 103 S Ct 1276), the Court of Appeals stated: "A suspect

whose right to counsel has attached with respect to a past crime may be subjected to questioning outside the presence of counsel by police who are investigating a new crime in progress, so long as the questioning is legitimately related to the new crime. Evidence thereby obtained, if not otherwise violative of the suspect's rights, may be presented to prove the suspect's guilt of the past crime" (*supra,* at p 217). Clearly, the police were legitimately investigating the planning of a "new crime" by employing a methodology which was "legitimately related" to the new crime. Further, the "new crime" exception applies even when the suspect is in custody (see *People v Middleton,* 54 NY2d 474).

The decision of the United States Supreme Court in *United States v Henry* (447 US 264) does not require a different result. In that case, the informer who was "wired" elicited incriminating statements from the defendant regarding the actual crime for which he was being prosecuted, and not a new crime. We note with interest that the Supreme Court of the State of Alabama was faced with this same issue where, as here, a defendant in a murder prosecution sought to kill a surviving victim who would testify against him (*Crawford v State,* 377 So 2d 145, affd 377 So 2d 159, vacated 448 US 904). Unsolicited information was given to an informer and the police recorded subsequent incriminating conversations. The Alabama Supreme Court ruled as the Court of Appeals did in *People v Mealer* (*supra*). The United States Supreme Court vacated the conviction and remanded for reconsideration in light of *United States v Henry* (*supra*), thus indicating that it may not agree with the "new crime" analysis relied on herein. However, until the Supreme Court rules definitively on this issue, we are constrained to follow the decision of the Court of Appeals in *People v Mealer* (*supra*).

A related issue is whether the recorded statements should have been suppressed on the ground that defendant was not given *Miranda* warnings before he made the statements (see, e.g., *State v Fuller,* 204 Neb 196; *Tarnef v State,* 512 P2d 923, 924 [Alaska]). Before police officers may elicit incriminating statements from a defendant undergoing a custodial interrogation, *Miranda* warnings

must be given (see *Rhode Island v Innis,* 446 US 291, 297). In the instant case, no *Miranda* warnings were given prior to defendant's conversations with Alderman, Alderman's girlfriend or the undercover police officer. The girlfriend and the police officer would clearly be considered police agents, as would Alderman with regard to conversations which took place after he offered his services to the police (see *United States v Henry,* 447 US 264, 270, *supra; People v Mealer,* 57 NY2d 214, 218, *supra*). Moreover, defendant must be considered to have been "in custody" for purposes of *Miranda* and its progeny even though he was incarcerated on an unrelated prior charge (*Mathis v United States,* 391 US 1, 4-5). However, we reject the contention that *Miranda* rights should have been given to defendant prior to his incriminating statements for the basic reason that defendant had not yet committed a crime.* Where the very words spoken by a defendant to police officers comprise the "new crime", it is not necessary that *Miranda* warnings be given before the defendant utters the words. At such a point, the "questioning" is neither investigatory nor custodial, but prior to any crime. This reasoning holds true even when the defendant is incarcerated when he makes the statements. While a defendant who is in custody may feel compelled to make incriminating statements regarding the crime for which he is in custody or other crimes which he may have committed, thus making *Miranda* warnings necessary, such a defendant is under no more pressure to speak than a nonincarcerated defendant with regard to commission of a new crime such as bribery of a police officer (see *People v Middleton, supra*), bribery of a witness (see *People v Mealer, supra*) or, as in this case, murder of a witness. This point is exemplified by the instant case, in which defendant made the most damaging incriminating statements regarding the hiring of a killer after he had been released on bail.

As a practical matter, if defendant had been given *Miranda* warnings prior to the recorded discussion with Al-

---

* We recognize that it could be argued that defendant committed the crime of conspiracy, or at least criminal solicitation, at some point prior to actual arrest. However, to base our holding on the point when a crime actually took place would require the police to guess at when that moment occurred and interject at that moment with *Miranda* warnings. Police officers are under no duty to halt a criminal investigation the moment they have evidence of some crime (cf. *Hoffa v United States,* 385 US 293, 310; *People v Middleton,* 54 NY2d 474, 481, *supra*).

derman, defendant certainly would not have continued to make plans with Alderman to hire a killer. Defendant would then have been free to seek to hire a killer through other contacts and the police may have been frustrated in their attempt to prevent a homicide.

■ Turning to the issue of whether the prosecutor served upon defendant the requisite notice that it intended to offer at trial evidence of statements made by defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion duly made (CPL 60.45, 710.30), we conclude that no such notice was served. However, we find that the trial court properly excused the prosecution's failure in this regard. The record clearly indicates that both of defendant's attorneys heard the tapes long before the trial. Defendant's first counsel moved to suppress them, and assigned counsel moved for an audibility hearing. Accordingly, since both of defendant's attorneys had actual notice of the tapes before trial and had been orally advised that the People intended to use them at trial, no prejudice to defendant existed. Similar circumstances have been held to constitute "good cause" excusing a failure to meet the requirements of CPL 710.30 (see *People v Michel,* 56 NY2d 1014, 1015).

■ Finally, our review of the three indeterminate concurrent sentences imposed by the trial court constrains us to hold that the sentence of 7 to 21 years for the crime of criminal solicitation in the second degree, which is a class D felony, was illegal. The Penal Law authorizes an indeterminate sentence with a maximum of no more than seven years (Penal Law, § 70.00, subd 2, par [d]) and a minimum of no less than one year (Penal Law, § 70.00, subd 3, par [b]) for the crime of criminal solicitation in the second degree. This crime is not a violent felony offense warranting a more severe sentence (Penal Law, § 70.02, subd 1), and defendant may not be sentenced as a second felony offender (Penal Law, § 70.06, subd 1, par [b], cl [ii]). This sentence must be vacated and the matter remitted to the trial court for resentencing. We do not find the remainder of the sentence to be harsh or excessive.

The judgment should be modified, on the law, by vacating the sentence imposed on the conviction of the crime of

criminal solicitation in the second degree, the matter remitted to County Court of Rensselaer County for resentencing for that crime, and, as so modified, affirmed.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment modified, on the law, by vacating the sentence imposed on the conviction of the crime of criminal solicitation in the second degree, matter remitted to County Court of Rensselaer County for resentencing for that crime, and, as so modified, affirmed.