THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNARD SHORT, Appellant.

Second Department, September 30, 1985

APPEARANCES OF COUNSEL

*Polstein, Ferrara & Campriello* (*Austin V. Campriello* of counsel), for appellant.

*Patrick Henry, District Attorney* (*John J. Ribeiro* of counsel), for respondent.

OPINION OF THE COURT

Bracken, J.

■ A suspect who has retained counsel with respect to a matter under investigation may not be interrogated regarding that matter in a noncustodial setting, except in the presence of counsel, where law enforcement authorities are aware of such representation (*People v Skinner,* 52 NY2d 24). On this appeal, we are called upon to review the denial, after a hearing, of defendant's motion to suppress certain statements which he claims were obtained in violation of the principle articulated in *Skinner.* Because we conclude that the statements in question were indeed procured under circumstances violative of the State Constitution's right to counsel, we reverse the judgment and order a new trial.

Defendant, a gasoline wholesaler, and his partner, Harold Shannon, operated a number of retail gasoline stations on Long Island beginning in 1981. Pursuant to their agreement, Shannon managed the stations, defendant supplied the gasoline, and profits were to be divided equally. After an initial period of prosperity, the business began to lose money, and each partner blamed the other for his losses. Defendant asserted that Shannon owed approximately $100,000 for gasoline supplied by defendant. However, Shannon denied owing that sum and maintained that defendant had engaged in improper practices, including "short" deliveries to their retail stations. Unable to resolve their dispute, the parties dissolved their relationship in January 1983, and defendant ceased all deliveries of gasoline to the remaining stations operated by Shannon.

On February 24, 1983, two of defendant's employees were caught by Suffolk County police officers in the act of "pumping out" the remaining gasoline from the ground storage tanks at the Pilot gasoline station operated by Shannon in Mastic Beach, Suffolk County. Upon their arrest for grand larceny, both employees told the police that they had been directed by defendant to pump out the tanks at Shannon's station.

At the time of this incident, allegations of widespread criminal wrongdoing in Long Island's gasoline industry were being investigated by a task force comprised of Federal, State and local authorities, including the District Attorney of Suffolk County. Defendant was one of many individuals and businesses targeted by the task force for investigation, and, upon learning of the arrest of defendant's employees, the District Attorney enlisted the cooperation of Shannon in furtherance of that investigation. During the following three months, Shannon met

with defendant on six occasions. Each time, Shannon was provided with a device with which he surreptitiously recorded his conversations with defendant. The contents of these tapes constituted the primary evidence against defendant regarding both the grand larceny charge (based upon the pump-out of the tanks at the gas station in Mastic Beach) and the charge of bribing a witness (based upon defendant's subsequent attempts to secure an agreement from Shannon to drop the charges). Consequently, it was these taped conversations that defendant moved to suppress before trial.

At the suppression hearing, the Assistant District Attorney supervising the investigation acknowledged that the primary topic discussed by defendant and Shannon in their recorded conversations was the pump-out and defendant's efforts to extricate himself from the investigation arising therefrom. Although the prosecutor maintained that his office had never been contacted by any attorney regarding representation of defendant, he did acknowledge that the tapes contained statements by defendant indicating that he had retained an attorney. However, the prosecutor interpreted this to mean that defendant had retained counsel solely with respect to his civil dispute with Shannon over moneys owed from their prior business dealings, and not with respect to the criminal investigation arising from the arrest of his employees for the pump-out.

Notwithstanding the prosecutor's assertions to the contrary, the evidence adduced at the suppression hearing established that at the time of Shannon's cooperation, law enforcement personnel knew that defendant had retained counsel with respect to the very matter which was then the subject of their criminal investigation. The tapes revealed that defendant had retained an attorney to represent his two employees in the criminal case, and defendant was greatly concerned about the possibility of being arrested and charged as well. Defendant indicated that he was utilizing his attorney to influence the criminal case by securing a dismissal of charges against his employees and forestalling the investigation before he himself was indicted. In fact, the tapes indicated that defendant's attorney had been in contact with Shannon's lawyer for the purpose of arriving at some agreement whereby the criminal prosecution and investigation could be terminated, and defendant stated that his lawyer had advised him that he might have to commence a lawsuit against Shannon in order to establish that their dispute was civil in nature and that the criminal charge was unfounded. The tapes further indicated that defendant subse-

quently presented Shannon with an affidavit, drawn by defendant's attorney for Shannon's signature, in which Shannon would state that the pump-out had resulted from a mere civil dispute. This affidavit was to be presented to the District Attorney for the purpose of securing a dismissal of the criminal case and, in consideration thereof, defendant would release Shannon from any debt.

In addition to the tapes themselves, other evidence brought out at the suppression hearing also established that the prosecution was aware of defendant's legal representation at the time it utilized Shannon as its agent to procure incriminating statements from defendant. A report prepared by detectives assigned to this investigation, dated March 15, 1983, identified the attorney and specifically referred to him as defendant's lawyer. The lawyer himself testified at the hearing that he had been specifically retained on this case on or about the date of the pump-out arrests, February 24, 1983, to represent defendant and the two charged employees. Although he had never specifically advised the District Attorney of his representation of defendant, he assumed that an associate of his firm had done so. The associate testified that he had advised a second Assistant District Attorney that the firm represented both the employees and their employer, and that prosecutor testified that he had relayed this information to the prosecutor supervising the investigation, who knew that defendant was the employer. Finally, when defendant was eventually indicted, the prosecution contacted the very lawyer retained by defendant to arrange for his surrender.

The County Court denied suppression, holding, *inter alia,* that the legal services obtained by defendant related solely to representation of his two employees on the criminal charges, and to representation of defendant himself with respect to possible civil litigation against Shannon. The suppression court determined that no attorney had ever advised law enforcement officials to refrain from questioning defendant, and knowledge that defendant had retained counsel with respect to the criminal investigation could not be imputed from the contents of the taped conversations. The court further determined that, in any event, the prosecution's purpose in obtaining statements from defendant was to secure evidence of future crimes, e.g., the bribery of Shannon, and not to obtain evidence against defendant regarding the prior pump-out.

As we have noted, the Court of Appeals in *People v Skinner* (52 NY2d 24, 32, *supra*) established the following rule regarding noncustodial interrogation: "[W]here * * * a defendant is known

to have invoked the right to and obtained the services of counsel on the matter about which the person is questioned, the State may not use statements elicited from that person in the absence of a waiver of counsel made in the presence of the attorney". In *Skinner,* the attorney retained by the defendant, then a suspect in a homicide investigation, informed the authorities that he represented defendant, and he specifically instructed them to refrain from questioning defendant in his absence (*People v Skinner, supra,* at p 27; *see also, People v Knapp,* 57 NY2d 161, *cert denied* 462 US 1106; *People v Steele,* 113 Misc 2d 658). However, we do not view such direct communication between the attorney and law enforcement officials as a necessary prerequisite to invocation of the *Skinner* rule. Noncustodial statements are admissible under *Skinner* unless the suspect has "retained counsel on the matter under investigation to the knowledge of the police * * * or [has] unequivocally informed the police of his intention to do so" (*People v Rowell,* 59 NY2d 727, 730). Thus, the right to counsel will attach under *Skinner* where the authorities have knowledge that the suspect has retained counsel in the matter under investigation, and the fact that the attorney may not have directly contacted the authorities to apprise them of this fact or to direct them not to question his client is not controlling in this matter (*People v Ellis,* 58 NY2d 748, 750; *see also, People v Garofolo,* 46 NY2d 592, 600). Knowledge by the police of such representation may be acquired from the suspect himself (*People v Ellis, supra*), so long as the suspect's statements are sufficiently unequivocal to establish that counsel has in fact been retained (*People v Johnson,* 55 NY2d 931, *revg* 79 AD2d 201, 203-204 on dissenting opn at App Div; *People v Medvecky,* 95 AD2d 921). On the other hand, where law enforcement authorities have no reason to be aware that a suspect has retained counsel on the matter under investigation, the right to counsel will not have attached (*People v Iannaccone,* 112 Misc 2d 1046).

As we have indicated, there was ample evidence in this case available to the District Attorney from which to impute knowledge that defendant had retained counsel with respect to the criminal investigation then underway (*cf. People v Rosa,* 65 NY2d 380). The County Court's determination that such representation was limited to the criminal charges against defendant's employees and the potential civil action against Shannon is simply not supported by the evidence adduced at the suppression hearing. The contacts between defendant's attorney's associate and the District Attorney, the taped conversations themselves, and the conduct of the prosecutors and investigative

personnel, all point inexorably to the fact that law enforcement officials knew, at the time they utilized their agent Shannon to procure incriminating statements from defendant, that defendant was indeed represented by counsel with respect to the investigation of his own criminal liability for the gasoline pump-out. Moreover, even if there was doubt or uncertainty as to whether legal representation extended to the pump-out investigation, the questioning of defendant without counsel was not justified. Arguable ambiguities in the attorney-client relationship cannot be relied upon by the prosecution as a license to violate the right to counsel, and where there is uncertainty as to the scope of representation, questioning in the absence of counsel cannot be permitted (*see, e.g., People v Marrero,* 51 NY2d 56, 59; *People v Coleman,* 42 NY2d 500, 507; *People v Ramos,* 40 NY2d 610, 617-618).

We also cannot agree with the County Court's conclusion that the prosecution's purpose in eliciting statements from defendant was to secure evidence of future crimes rather than evidence regarding the previously committed pump-out, thereby rendering the *Skinner* rule inapplicable. It is, of course, well settled that the right to counsel does not extend to those circumstances where a new crime is being committed. Simply put, "[a] suspect whose right to counsel has attached with respect to a past crime may be subjected to questioning outside the presence of counsel by police who are investigating a new crime in progress, so long as the questioning is legitimately related to the new crime. Evidence thereby obtained, if not otherwise violative of the suspect's rights, may be presented to prove the suspect's guilt of the past crime" (*People v Mealer,* 57 NY2d 214, 217, *cert denied* 460 US 1024). This so-called "new crime" exception (*People v Costello,* 101 AD2d 244, 247) applies to custodial interrogation (*People v Mealer, supra; People v Middleton,* 54 NY2d 474) and to noncustodial interrogation such as that which occurred in this case (*People v Ferrara,* 54 NY2d 498). In *Ferrara,* a partner in a nursing home supply company, who had retained counsel in connection with his appearance before a Grand Jury investigating fraud in the nursing home industry, offered a kickback to a nursing home operator who was then acting as an agent of the prosecution. The Court of Appeals held that the evidence of that kickback was not subject to suppression under *Skinner* (*supra*), because the questioning did not relate to past kickbacks for which defendant was being investigated and for which he had retained counsel (*People v Ferrara, supra,* at pp 507-508). Thus, the court sanctioned the use of "investigative techniques that

elicit in a noncustodial setting not a confession, but a plan to commit a new crime of the type then under scrutiny" (*People v Ferrara, supra,* at p 505).

In *People v Mealer (supra),* defendant was in custody on a murder charge. Acting through his wife, defendant offered money to a potential prosecution witness to perjure himself. The witness advised the police of this offer, and he was instructed to meet with defendant in jail. The witness did so, and defendant made the offer. In affirming defendant's conviction for murder, the Court of Appeals held that although defendant's right to counsel had unquestionably attached, the use by the police of an agent to secure incriminating statements regarding subornation of perjury, a new crime which was distinct from the pending murder charge, did not violate defendant's right to counsel, because his statements "were made 'in response to inquiry legitimately related' to the new crime" (*People v Mealer, supra,* at p 218, citing *People v Middleton,* 54 NY2d 474, 482, *supra),* and "the police investigation into the new crime was not used as a pretext for circumventing defendant's rights" (*People v Mealer, supra,* at p 218). Moreover, the court held that so long as the interrogation was legitimately related to the new crime, the evidence obtained could properly be offered by the prosecution to prove defendant's guilt of the past crime (*People v Mealer, supra,* at p 217).

Applying the foregoing principles to this case, we perceive no grounds for invocation of the "new crime" exception. The task force has been given a broad mandate to investigate and prosecute a wide variety of criminal activities in the gasoline industry, including, *inter alia,* failure to pay sales and excise taxes, misbranding of gasoline, sale of adulterated gasoline and falsification of business records. However, at the time that Shannon was directed to meet with defendant in the hope of obtaining incriminating statements, there was no evidence pointing to defendant's involvement in any such activities. In fact, the only indication of wrongdoing by defendant prior to the pump-out was that two complaints had been made against him to the Suffolk County Department of Consumer Affairs in 1982 for alleged sales of unbranded gasoline, and neither complaint had resulted in charges. Thus, when the authorities, through their agent Shannon, questioned defendant between March and May 1983, they had absolutely no reason to know or believe that defendant was contemplating the commission of a new crime, or that any such new crime was then in progress. Although the prosecution may have hoped to obtain evidence of future crimes or of additional crimes theretofore undetected, it is clear that the

primary purpose in questioning defendant was to secure incriminating evidence regarding his role in a prior crime, i.e., the pump-out. This conclusion is supported by the fact that Shannon was never instructed by the prosecutor to avoid the subject of the pump-out in his conversations with defendant. To the contrary, Shannon was encouraged to use the pump-out as an "investigative entree". It simply cannot be said that Shannon's repeated focusing of his conversations with defendant on the pump-out and ways to persuade the District Attorney to terminate the criminal prosecution and investigation constituted inquiry legitimately related to a new crime (*People v Mealer, supra,* at p 218; *People v Middleton, supra,* at p 482). Thus, we hold that the evidence of defendant's statements to Shannon made in the course of their six meetings between March and May 1983 was obtained in violation of defendant's right to counsel and, therefore, must be suppressed.

Because we are ordering a new trial, it is necessary to pass upon one further contention advanced by defendant on this appeal. The prosecution, over objection, offered evidence at the trial regarding an incident in June 1981, in which defendant had been arrested for a pump-out at a Nassau County gas station and charged with grand larceny in the second degree. Defendant had subsequently pleaded guilty to disorderly conduct in satisfaction of that charge, admitting that he had taken the gasoline without the permission of the owner. However, at sentencing, defendant's counsel had argued that the incident was merely part of a business dispute between a station operator and a gasoline supplier.

Generally, evidence of prior uncharged criminal conduct is not admissible as part of the People's direct case if its sole purpose is to show that the accused was predisposed to commit the crime charged (*People v Santarelli,* 49 NY2d 241, 247; *People v Allweiss,* 48 NY2d 40, 46-47; *People v Molineux,* 168 NY 264). Such evidence is only marginally relevant to the question of the defendant's guilt and, therefore, its probative value is deemed to be outweighed by its possible prejudicial effect. Accordingly, such evidence is excluded as a matter of judicial policy (*People v Santarelli, supra,* at p 247; *People v Allweiss, supra,* at p 47; *People v Molineux, supra,* at p 294). However, evidence of other crimes may be admissible in an appropriate case to prove some fact other than defendant's criminal propensity, such as, for example, intent (*see, e.g., People v Santarelli, supra,* at pp 247-248; *People v Allweiss, supra,* at pp 46-47; *People v Molineux, supra,* at pp 291-294). When evidence of uncharged crimes is relevant to some issue other than the criminal disposition of the

defendant, its admissibility is based upon the theory that the probative value will outweigh the potential prejudice to the defendant, but if the evidence is actually of marginal relevance when compared to its potential for prejudice, it should not be admitted even though it may bear some relationship to a fact to be proven (*People v Allweiss, supra,* at p 47; *People v Dales,* 309 NY 97, 101; *see also, People v McKinney,* 24 NY2d 180, 185; *People v Liller,* 20 NY2d 727).

The People assert that the evidence of defendant's conviction arising from the prior pump-out was properly admitted at the trial in this case to prove his larcenous intent with respect to the later 1983 Suffolk County pump-out. The prior criminal conduct was virtually identical to the conduct for which the defendant was being tried and the question is whether its relevance was outweighed by its potential for prejudice, in which event the evidence must be excluded as a matter of policy. Moreover, while mere similarity will not ipso facto shield the defendant from use of evidence of a prior crime, the probative value of the prior crime must be established in the first instance, irrespective of any potential prejudice (*People v Irby,* 79 AD2d 713, 714).

In this case, the evidence of the commission of a virtually identical act on a prior occasion by defendant, and his plea of guilty to an offense, was prejudicial. However, the question of whether the 1981 pump-out was performed with larcenous intent was relevant to the question of whether defendant intended to steal gasoline from Shannon in 1983 and had probative value. Thus, we do not consider its admission as constituting an improvident exercise of the broad discretionary power afforded to the trial court in such matters (*see, People v Schwartzman,* 24 NY2d 241, 244, *cert denied* 396 US 846).

We have considered the remaining contentions advanced by defendant and find them to be without merit.

GIBBONS, J. P., BROWN and O'CONNOR, JJ., concur.

Judgment of the County Court, Suffolk County, rendered March 6, 1984, reversed, on the law and the facts, that branch of defendant's pretrial motion which sought suppression of statements granted, and new trial ordered.