◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOWARD BAND, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Delin, J.), rendered May 21, 1984, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court, dated May 10, 1984, which denied the defendant's motion to vacate the verdict pursuant to CPL 330.30.

Ordered that the judgment is affirmed.

The principal issue in this case involving the murder of his wife by the defendant was whether the victim's death was a homicide by asphyxiation or, rather, an accident resulting from a fall down a flight of stairs. Dr. Leslie Lukash, the Chief Medical Examiner of Nassau County, testified that he had performed the autopsy of the deceased with one of his assistants, Dr. Gil Figueroa. Dr. Lukash concluded that the death did not result from a fall, but rather from traumatic asphyxiation. Although the People never called Dr. Figueroa as a witness, that doctor did subsequently appear in court and was permitted to sit with the prosecutor during the testimony of one of the defendant's medical experts. Thereafter, the trial court denied a request by the defendant for a missing witness charge regarding Dr. Figueroa, concluding that the witness had been equally available to both sides, and that his testimony would have been cumulative to that of Dr. Lukash.

After the defendant was found guilty, he moved to set aside the verdict pursuant to CPL 330.30. In support of the motion, the defendant submitted an affidavit of his attorney alleging that he had been told by one Dr. Orlando Castellon of the Medical Examiner's office that Dr. Figueroa had not been called as a witness by the prosecution because Figueroa did not agree with Dr. Lukash's conclusion as to the cause of death. The defendant argued that the prosecution's failure to have revealed the purported opinion of Dr. Figueroa constituted suppression of exculpatory evidence, thereby requiring vacatur of the verdict (see, CPL 330.30 [1]; Brady v Maryland, 373 US 83). The defendant further argued that this revelation constituted newly discovered evidence which warranted a new trial (see, CPL 330.30 [3]).

In opposition to the motion, the People submitted an affidavit of the trial prosecutor in which he denied having knowledge of any disagreement between Drs. Lukash and Figueroa. The prosecutor asserted that Dr. Figueroa had, at all times, voiced the opinion that the death was caused by homicidal asphyxiation, and the prosecutor had not called him to testify because he believed that he was precluded from doing so once Dr. Figueroa had assisted him in the courtroom during the testimony of the defendant's expert. In addition, the People submitted affidavits of Drs. Castellon and Figueroa. Dr. Castellon denied that he had ever advised defense counsel that Dr. Figueroa "had violent disagreements" with Dr. Lukash or that Figueroa had expressed the opinion that the cause of the death was "undetermined". Dr. Figueroa asserted that he had

determined immediately after the autopsy that the victim's death was a homicide, and he had thereafter concluded that the death had been caused by homicidal asphyxiation by unspecified means.

By order dated May 10, 1984, the court denied the motion to set aside the verdict, concluding that the moving papers did not contain the requisite sworn allegations of facts essential to support the motion *(see,* CPL 330.40 [2] [a]; [2] [e] [ii]).

On appeal, the defendant argues that the trial court committed error both by denying the request for a missing witness charge and by denying the motion to set aside the verdict without first conducting an evidentiary hearing. We disagree.

A missing witness charge should be given where it is shown "that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party" *(People v Gonzalez,* 68 NY2d 424, 427; *see also,* 1 CJI [NY] 8.53). Thus, even where the party requesting a missing witness charge establishes prima facie that the witness is knowledgeable and can be expected to testify favorably to the party that did not call him, the request is properly denied where the party opposing the charge demonstrates, *inter alia,* that the witness' testimony would be merely cumulative *(see, People v Gonzalez, supra,* pp 427-428; *see also, People v Almodovar,* 62 NY2d 126, 132-133; *People v Gonzalez,* 111 AD2d 870; *People v Porter,* 110 AD2d 662; *People v Brando,* 109 AD2d 845; *People v Baldo,* 107 AD2d 751, 752; *People v Walker,* 105 AD2d 720). In this case, there was an adequate demonstration by the People that Dr. Figueroa's testimony would have been cumulative to that of Dr. Lukash.

Moreover, nothing submitted in conjunction with the post-verdict motion requires a different result. The motion was based solely upon hearsay allegations contained in the affidavit of the defendant's attorney, and those allegations were expressly contradicted and adequately refuted by the nonhearsay allegations contained in the affidavits submitted in opposition to the motion. As noted by the trial court in denying the motion, the affidavits proffered by the People contained the sworn statements of the very persons upon whose testimony the defendant would have had to rely in order to prevail on the motion. Under the circumstances, it was not an abuse of discretion for the trial court to have denied the motion with-

out conducting an evidentiary hearing *(see,* CPL 330.40 [2] [a]; [2] [e] [ii]; *People v Brown,* 56 NY2d 242, 247; *People v Latella,* 112 AD2d 321, 323; *People v Fusillo,* 94 AD2d 802).

The defendant also assigns error to the admission into evidence of the testimony of several witnesses to the effect that the defendant had, on separate occasions during a period of approximately one year prior to the date of the crime, asked them for the name of somebody who might be interested in committing a murder in exchange for money. We do not, however, view the admission of such testimony as having constituted an improvident exercise of the broad discretion afforded to the trial court *(see, People v Schwartzman,* 24 NY2d 241, 244, *cert denied* 396 US 846; *People v Short,* 110 AD2d 205, 213, *lv denied* 67 NY2d 657). To the extent that the evidence in question suggested that the defendant had committed uncharged crimes, e.g., criminal solicitation, such evidence was not impermissibly introduced for the sole purpose of showing a predisposition on the part of the defendant to commit the crime charged *(see, People v Allweiss,* 48 NY2d 40, 46; *People v Short, supra,* p 212; *People v Sims,* 110 AD2d 214, 220, *lv denied* 67 NY2d 657). To the contrary, because the primary issue in this case was whether the death was accidental or as the result of a homicide, the evidence in question was properly admitted because of its direct probative value upon the material questions of the defendant's motive and intent *(see, People v Ventimiglia,* 52 NY2d 350, 359; *People v Allweiss, supra,* p 47; *People v Molineux,* 168 NY 264, 293; *People v Short, supra,* p 212; *People v Sims, supra,* p 220) and the absence of mistake or accident *(see, People v Ventimiglia, supra,* p 359; *People v Allweiss, supra,* p 47; *People v Molineux, supra,* p 293; *People v Sims, supra,* pp 220-221). Moreover, the probative value of this testimony outweighed its potential for prejudice to the defendant *(see, People v Allweiss, supra,* p 47; *People v Short, supra,* pp 212-213; *People v Sims, supra,* p 220), and any such prejudice was further obviated by the trial court's limiting instructions to the jury *(see, People v Weir,* 120 AD2d 554; *People v Norman,* 118 AD2d 597).

Inasmuch as the defendant neither objected to the trial court's circumstantial evidence charge nor requested any further instructions with respect to the evaluation of circumstantial evidence, his claim that the charge was erroneous is not preserved for appellate review *(see,* CPL 470.05 [2]; *People v Dawson,* 115 AD2d 612; *People v Willis,* 107 AD2d 830). In any event, the circumstantial evidence charge delivered by the court, read as a whole, adequately stated the principles of law

necessary to permit the jury to properly evaluate the evidence in the case *(see, People v Douglas,* 118 AD2d 722, 723).

Finally, upon viewing the evidence in the light most favorable to the prosecution, and giving it the benefit of every reasonable inference to be drawn therefrom, we find that the jury reasonably concluded that the People had proven the defendant's guilt beyond a reasonable doubt and to a moral certainty *(see, People v Betancourt,* 68 NY2d 707, 709-710; *People v Bay,* 67 NY2d 787, 788; *People v Giuliano,* 65 NY2d 766, 767-768; *People v Marin,* 65 NY2d 741, 742). Lazer, J. P., Mangano, Bracken and Niehoff, JJ., concur.