■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LORENZO BROOK, Appellant.—Mercure, J.

On the morning of June 18, 1986 two Clinton Correctional Facility inmates became involved in a fight. One stabbed the other several times with a homemade knife consisting of a sharpened steel rod with a shoelace wrapped around one end to form a handle and strap. As a result of this incident, a Grand Jury returned an indictment charging defendant with the crimes of assault in the second degree and criminal possession of a weapon in the third degree. Following a jury trial, defendant was found guilty as charged in the indictment and was sentenced to concurrent terms of imprisonment of 3½ to 7 years on each count, to run consecutively to any sentences defendant was already serving. This appeal followed.

Correction Officers Michael Canning and Fred Kitterle were both in the general vicinity of the altercation when it began. Each saw one inmate making stabbing motions at another inmate and ran toward the participants, arriving from different directions at approximately the same time. The officers pulled the inmates apart and Canning grabbed the right wrist of the assailant and took the knife away from him. Although

his recollection did not permit an in-court identification of the weapon, Canning testified that it was approximately 11 inches long and was tied to the assailant's right wrist "with a shoestring-like affair". He also testified that he put his initials on the weapon and personally brought it to the office of Deputy Superintendent Ronald Fuller.

Kitterle testified that upon arriving at the scene, he assisted Canning in subduing defendant and then led defendant over to other officers who had come on the scene. Kitterle was able to give a detailed and accurate description of the weapon and had no difficulty identifying defendant at trial as the inmate who committed the crimes. Fuller testified that on June 18, 1986, Canning brought a homemade weapon to his office which remained secured in the evidence locker until he personally turned it over to State Police Investigator Robert Denny the following day. Denny accounted for the weapon's location from that day until trial in March 1987.

Initially, we agree with County Court's determination that the People established a proper foundation for receipt of the weapon into evidence. The credible and uncontroverted testimony of Canning, Fuller and Denny established an unbroken chain of custody *(see, People v Connelly,* 35 NY2d 171, 174). Although it is true, as defendant asserts, that the People offered no direct proof that the evidence was in the same condition as at the time of the stabbing *(see, People v Julian,* 41 NY2d 340, 342-343), it was established that the evidence was secured in such a manner as to negate the likelihood of its alteration. Kitterle's detailed description of the knife taken from defendant, coupled with its unique characteristics *(see, supra,* at 343), also permitted a finding that the evidence was in its original condition. The absence of direct proof that the knife was in substantially the same condition as at the time of the stabbing goes to the weight of the evidence and not its admissibility *(see, People v Coleman,* 55 AD2d 981, 982).

We also agree with County Court that there is ample evidence to substantiate Kitterle's in-court identification of defendant. It is clear from Kitterle's testimony that he was able to see the assailant for a period of time before, during and immediately after the incident and came in extremely close proximity to him when helping subdue him, thereby providing a more than sufficient basis for the in-court identification *(see, People v Burrus,* 125 AD2d 583, *lv denied* 69 NY2d 825 [witness's observation of the defendant's face for about one minute at close range in a well-lit office held sufficient]; *People v Mitchell,* 116 AD2d 744, *lv denied* 67 NY2d 947;

*People v Herring,* 47 AD2d 979). Defendant's contention that the identification evidence is insufficient is based in large part upon a misunderstanding of certain of Kitterle's testimony. Kitterle candidly acknowledged that he was not able to identify the assailant at the time of the stabbing and that his identification of defendant was based upon information gained from other correction officers. It is clear from Kitterle's testimony, however, that when he uses the term "identification" in this sense he is referring to knowledge of defendant's name and not the ability to recognize him. In view of Kitterle's demonstrated ability to recognize defendant as the assailant, his knowledge of defendant's name is irrelevant. "Where a witness positively identifies a defendant as the man who committed a crime, the weight of the evidence of identification is for the jury unless it is incredible as a matter of law" *(People v Seppi,* 221 NY 62, 68; *People v Malphurs,* 111 AD2d 266, 269, *lv denied* 66 NY2d 920; *People v Noland,* 27 AD2d 663).

Finally, we find no prejudicial error in County Court's denial of defendant's request for a missing witness charge. In view of Kitterle's testimony, defendant did not meet his burden of promptly notifying County Court that there were uncalled witnesses with "knowledge of any evidence, other than that found to be cumulative, that was material to any issue in the case" *(People v Gonzalez,* 68 NY2d 424, 430-431, n 2; *see, People v Almodovar,* 62 NY2d 126, 133; *People v Band,* 125 AD2d 683, 686).

Judgment affirmed. Casey, J. P., Yesawich, Jr., Levine, Harvey and Mercure, JJ., concur.